254 B.R. 480 (2000)
In re K.D. COMPANY, INC., doing business as Bleu Ice Gea, also known as K.D. Company, Inc., Debtor.
Behles-Giddens, P.A., now known as J.D. Behles & Associates, Appellant,
v.
Martin Raft, Appellee.
BAP No. NM-00-011. Bankruptcy No. 96-12974.
United States Bankruptcy Appellate Panel of the Tenth Circuit.
November 7, 2000.
*481 *482 Submitted on the briefs:[*]
Jennie Deden Behles of J.D. Behles & Associates, a Commercial Law Firm, P.C., Albuquerque, New Mexico, for Defendant-Appellant.
David T. Thuma of Jacobvitz, Thuma & Walker, P.C., Albuquerque, New Mexico, for Plaintiff-Appellee.
Before BOULDEN, ROBINSON, and CORNISH, Bankruptcy Judges.

OPINION
BOULDEN, Bankruptcy Judge.
This appeal arises from a dispute between two creditors over the interpretation of a provision in a confirmed Chapter 11 plan that allowed unpaid administrative claimants to seek disgorgement from paid administrative claimants. Utilizing the plan's provision, the Chapter 11 debtor's landlord obtained a judgment requiring disgorgement of almost $40,000 in fees from the debtor's former general counsel. The law firm now appeals, challenging the bankruptcy court's determination that the confirmed plan was res judicata, and that disgorgement from the law firm was appropriate under the facts of this case. Finding no error in the bankruptcy court's ruling, we AFFIRM.
I. BACKGROUND
K.D. Company, a clothing manufacturer and the debtor herein (Debtor), filed a *483 Chapter 11 petition in July of 1996. Behles-Giddens, P.A., n/k/a J.D. Behles & Associates, P.C. (BG), served as the Debtor's general counsel from the petition date until approximately May 1997, when it withdrew and was replaced by other counsel. Over the course of its employment, the Debtor paid BG $194,072.67 on account of approved interim fee applications.
On the petition date, and for a period of time post-petition, the Debtor leased real property that was owned by Martin A. Raft (Raft). The Debtor eventually rejected the lease and vacated the premises. In November 1997, the bankruptcy court approved, over the objections of BG and others, a stipulation between the Debtor and Raft resolving Raft's claim for unpaid post-petition rent by allowing Raft an administrative expense claim of $120,000 (1997 Order). The bankruptcy court reserved judgment on the priority of Raft's administrative expense claim in relation to other administrative expense claims, holding that such a decision would be made at a later date if the Debtor did not have sufficient funds to pay similar claimants in full.
The Debtor eventually was unable to pay all administrative claims in full. Some administrative claimants, including Raft, were not paid any amount on their administrative claims. Other administrative claimants were either paid in full or, as in BG's case, were paid substantial portions of their claims.
In January 1997, BG filed a proposed disclosure statement and plan of reorganization for the Debtor. These documents did not specifically deal with the issue of the unpaid, or disproportionally paid, administrative claims. Subsequent economic events in the Debtor's business and a change to different counsel prompted the Debtor to file a modification to the disclosure statement and plan. The modified disclosure statement, which was approved by the bankruptcy court, together with the modified plan (Modified Plan), attempts to address the unequal payment of administrative claims. The Modified Plan specifically addresses the Debtor's failure to pay Raft's claim, because, in light of the full or partial payments to other administrative claimants, Raft demanded that he be paid in full on the effective date as required by 11 U.S.C. § 1129(a)(9)[1], or he would object to confirmation.
The Modified Plan provides that instead of being paid in full on the effective date, administrative claimants will be paid over time, after cure of a mortgage arrearage but prior to the payment of unsecured creditors. In addition, paragraph 7.8 of the Modified Plan states as follows:
[A] condition of the confirmation of the Modified Plan will be the entry of an order, either separately or as part of the confirmation order, that the Debtor (or any successor to the Debtor) retains the right to obtain immediate disgorgement from any professional . . . who has been paid any fees or reimbursement for costs . . . as may be necessary for the Debtor (as Debtor in Possession), chapter 11 or Chapter 7 Trustee, or other successor to the Debtor, to provide equal payment of administrative claims within the priorities provided by the Bankruptcy Code. The order will be binding on any professional that will have received any post petition fees or cost reimbursement as of the date of the confirmation hearing.
Appellant's App. at 1853; Modified Plan ¶ 7.8 (Emphasis added).
The Modified Plan then lists seven professionals, including BG, that had received payments of $340,702.28 out of a total amount of $532,715.07 in fees allowed during the Chapter 11 (the Disgorgement Targets). It also lists eight administrative claimants, including Raft, whose allowed *484 claims totaling $224,465 were totally unpaid (the Disgorgement Payees). Paragraph 7.8 further states that if any of the Disgorgement Targets objected to the disgorgement provision, the Debtor would request immediate disgorgement as a condition to submitting the Modified Plan for confirmation, so as to assure pro rata distribution to the Disgorgement Payees.
Paragraph 7.8 includes the following language to ensure enforcement of the disgorgement provision:
In the event that the Debtor or a successor of the Debtor fails to take the necessary action to obtain a disgorgement of the interim payments as required by this paragraph, then any administrative creditor may make demand on the Debtor to take such action by means of the process described above for non-monetary defaults. If the Debtor or its successor then fails to take such action, the claimant having sent the notice may take such action as it [sic] appropriate to enforce the provisions of this paragraph 7.8, including but not limited to filing an action (but only in the federal courts of the District of New Mexico . . .) to require disgorgement. By accepting any payment from the Debtor, the defendant in any such action shall agree to the jurisdiction and venue of these courts for any such action.
These provisions concerning the disgorgement of interim payments shall continue to be effective and binding on all the administrative and priority claim payees until all administrative and priority claims have been paid in full, even if such period extends beyond the substantial consummation of the Plan or the closing of the case.
Appellant's App. at 1854; Modified Plan ¶ 7.8.
The Modified Plan also provides that the bankruptcy court retains jurisdiction to make such orders as are necessary to require professionals to disgorge any interim payments previously received, to ensure that all Chapter 11 professionals and other administrative expense claimants are paid their claims on a fully pro rated basis. Such jurisdiction continues "for as long as is necessary following the confirmation of the Plan (including without limitation after the substantial consummation of the Plan . . .) to carry out the provisions of . . . paragraph[] 7.8. . . ." Appellant's App. at 1855; Modified Plan ¶ 7.16.
The Modified Plan is silent as to whether the disgorgement provision of paragraph 7.8 also required non-professional administrative claimants to disgorge payments made to them in order to equalize payments to all administrative claimants. It is this omission, together with other references to disgorgement as allowed by § 726, that Raft later asserted created an ambiguity in the Modified Plan.
The Debtor's approved modified disclosure statement, original plan and Modified Plan, notice of confirmation hearing and ballots were served on creditors, including BG, on June 18, 1998. On July 8, 1998, the date of the confirmation hearing, the Modified Plan was once again modified (Second Modification) to clarify that a member of the Debtor's owner's family would continue to work as a salesman for the Debtor for such time as ownership of the Debtor remained in the family. Notice of the Second Modification was not given to creditors.
On July 14, 1998, the bankruptcy court entered an order (Confirmation Order) confirming the Debtor's Modified Plan, as further modified by the Second Modification (collectively, the Confirmed Plan). The Confirmation Order states that none of the administrative expense claimants, including the Disgorgement Targets, objected to accepting payment after the effective date, or to the Debtor's reservation of its right to seek disgorgement as provided in Paragraph 7.8 of the Confirmed Plan.
By December 1998, Raft had not obtained any payment on his administrative expense claim. He twice demanded that *485 the Debtor seek disgorgement of fees paid to professionals pursuant to paragraph 7.8 of the Confirmed Plan. In February 1999, having had no response from the Debtor, Raft filed a "Motion of Martin Raft for Disgorgement of Professional Fees and Expenses Pursuant to Confirmation Order and Confirmed Plan." This pleading ultimately was treated by the bankruptcy court as a complaint commencing an adversary proceeding. Responses were filed by BG and others, but, with the exception of BG, all of the administrative expense claimants either defaulted or eventually settled the matter.
Raft and BG filed motions for summary judgment which were denied, but in so doing, the bankruptcy court apparently[2] made several rulings that narrowed the issues for trial. The bankruptcy court held that the Confirmed Plan and Confirmation Order had a res judicata effect on the parties, and BG could not collaterally attack them. It ruled that the 1997 Order established Raft's $120,000 administrative expense claim in the case, but the priority of his claim was unresolved. It also ruled that the Confirmed Plan, which controlled the dispute, was ambiguous and required the court to hear extrinsic evidence to interpret it. Finally, the bankruptcy court left for trial whether disgorgement was appropriate, stating that Raft was required to show an administrative deficiency and that the Disgorgement Targets received more than their pro rata share of available estate funds. The matter thereafter was tried as a two-party dispute between Raft and BG.
After trial, the bankruptcy court entered its findings and conclusions, and an order and judgment (Disgorgement Order)[3] that incorporated the prior rulings on summary judgment. In the Disgorgement Order, the bankruptcy court held that, although ambiguous, the Confirmed Plan was an enforceable, binding contract. As a binding contract, the Confirmed Plan entitled the Disgorgement Payees, upon the Debtor's default, to seek disgorgement from the Disgorgement Targets if they did not receive a pro rata share of what had been paid pre-confirmation to the Disgorgement Targets. Furthermore, the bankruptcy court concluded that the Confirmed Plan provided that Raft's administrative expense claim, as established under the 1997 Order, was of equal priority to other administrative expense claimants, such as BG.
So finding, the bankruptcy court went on to determine that disgorgement was appropriate under the Confirmed Plan inasmuch as the Disgorgement Targets had received more than their pro rata share of available funds, the Debtor was "not a probable source of funds to pay the unpaid administrative expense claimants[,]" Appellant's App. at 58-59; Find. of Fact and Concl. of Law, at Find. of Fact ¶ 13, and Raft had made proper demand on the Debtor to seek disgorgement under the Confirmed Plan prior to exercising his individual right to do so. Based on a pro rata calculation, and deducting what other professionals had already agreed to disgorge, Raft was entitled to collect approximately $40,000 from BG.
*486 BG filed a timely notice of appeal from the Disgorgement Order. In response to this Court's request for supplemental briefing resulting from issues raised by documents contained in the appendix, we learned that the bankruptcy court converted the Chapter 11 case to a Chapter 7 case on July 26, 2000. On the date of the § 341 meeting, the Chapter 7 trustee filed a report indicating there were no assets in the case for distribution to creditors.
II. APPELLATE JURISDICTION
With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002. BG timely filed a notice of appeal from the Disgorgement Order, and the parties have consented to this Court hearing the appeal by failing to elect to have it heard by the district court. 28 U.S.C. § 158(c); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001-1. The Disgorgement Order is a final order because it "`ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Van Cauwenberghe v. Biard, 486 U.S. 517, 521-22, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). In reviewing the final Disgorgement Order listed in BG's notice of appeal, we also review the bankruptcy court's earlier interlocutory orders denying Raft and BG's motions for summary judgment. Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1382 n. 7 (10th Cir.1994) (quoting 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3949 at 440 (Supp.1994), concluding that "a notice of appeal that names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders.").
Although the Disgorgement Order is a final appealable order, we are obligated to decide, sua sponte, the jurisdictional issue of whether the appeal is moot as a result of the conversion of the Debtor's Chapter 11 case to Chapter 7. Arizonans for Official English v. Arizona, 520 U.S. 43, 73, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (court has obligation to satisfy itself that it has jurisdiction to hear appeal) (quoting Bender v. Williamsport Area School Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)); accord Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1347 n. 1 (10th Cir.1994). "To qualify as a case fit for federal-court adjudication, `an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" Arizonans for Official English, 520 U.S. at 67, 117 S.Ct. 1055 (quoting Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). A matter is moot if the issues presented are no longer live because we are incapable of rendering effective relief or restoring the parties to their original position, or the parties lack a legally cognizable interest in the outcome. Church of Scientology v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). If Raft does not have a post-conversion claim against BG or his right to recover against BG granted by the Confirmed Plan was terminated by conversion, we must dismiss this appeal as moot. For the reasons set forth below, we conclude that the appeal is not moot.
Raft's pre-confirmation administrative expense claim was discharged when the Confirmed Plan was confirmed. 11 U.S.C. § 1141(d)(1)(A); Confirmed Plan, ¶ 7.9; see Reliable Electric Co. v. Olson Const. Co., 726 F.2d 620, 623 (10th Cir.1984) (claim not discharged upon plan confirmation only if creditor fails to receive reasonable notice of confirmation hearing). The discharged, pre-confirmation administrative expense claim was replaced upon confirmation with the right to obtain payment *487 as set forth in the Confirmed Plan, or, as some courts have stated, replaced by a "Plan Claim." In re Troutman Enters. Inc., 253 B.R. 8, 11 (6th Cir. BAP 2000) (confirmation discharged creditors' pre-confirmation debt and replaced it with their Plan Claims) (citing In re Benjamin Coal Co., 978 F.2d 823, 826 (3rd Cir.1992) (confirmation of Chapter 11 plan discharged the allowed administrative expense claim)). Since the Debtor failed to seek disgorgement from the Disgorgement Targets, Raft was entitled to sue them in his own behalf to obtain recovery of his Plan Claim. The Confirmed Plan was neither revoked nor vacated upon conversion.[4] Therefore, the rights granted to Raft under the Confirmed Plan also remained post conversion.
Not only does Raft's Plan Claim against BG survive conversion, but his right to recover from BG is not impacted by the conversion of the Debtor's Chapter 11 case to Chapter 7.[5] Upon confirmation of the Confirmed Plan, the assets of the estate, including the right to seek disgorgement from the Disgorgement Targets, vested in the reorganized Debtor. 11 U.S.C. § 1141(b); Confirmed Plan, ¶ 7.1; see Paul v. Monts, 906 F.2d 1468, 1472 (10th Cir.1990) (per curiam); Harker v. Troutman (In re Troutman Enters., Inc.), 253 B.R. 1, 5 (6th Cir. BAP 2000) (general rule is that all property of a Chapter 11 estate vests with the reorganized debtor upon confirmation).[6] This right to seek disgorgement from the Disgorgement Targets was then transferred to Raft pre-conversion when the reorganized Debtor failed seek disgorgement upon proper demand. The disgorgement right created under the Confirmed Plan belonged to *488 Raft, not the reorganized Debtor, at the time of conversion, and was not the property of the pre-confirmation estate or the reorganized Debtor.[7]
We therefore conclude that the conversion of the Debtor's Chapter 11 case to Chapter 7 has not rendered this appeal moot. We can render effective relief in this case by determining whether the bankruptcy court erred in its treatment of Raft's Plan Claim under the Confirmed Plan, and by determining whether recovery against BG was appropriate.
III. STANDARD OF REVIEW
"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable de novo), questions of fact (reviewable for clear error), and matters of discretion (reviewable for `abuse of discretion')." Pierce v. Underwood, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); see Fed. R. Bankr.P. 8013; Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1370 (10th Cir. 1996).
The application of the res judicata doctrine is a question of law subject to de novo review, meaning that we afford no deference to the bankruptcy court's decision. Plotner v. AT & T Corp., 224 F.3d 1161, 1168 (10th Cir.2000). Questions as to whether a contract, such as the Confirmed Plan, is ambiguous are likewise reviewed de novo. Mid-West Conveyor Co. v. Jervis B. Webb Co., 92 F.3d 992, 995 (10th Cir.1996). However, if the bankruptcy court's interpretation of the Confirmed Plan is based on "the record, testimony or other extrinsic evidence, its interpretation is reviewed for clear error." Pioneer Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortgage Entities), 248 B.R. 368, 375 (9th Cir. BAP 2000) (citations omitted). "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).
IV. DISCUSSION
BG's brief details twenty-one points of error. However, this rather unwieldy and somewhat repetitive list can be consolidated into three issues: 1) whether the bankruptcy court erred in barring BG's collateral attack of the Confirmed Plan and Confirmation Order, 2) whether the bankruptcy court erred in its interpretation of the Confirmed Plan, and 3) whether the bankruptcy court erred in ordering disgorgement. For the reasons stated below, we conclude that the bankruptcy court did not err and must be affirmed.
A. The Bankruptcy Court Did Not Err in Barring BG's Collateral Attack of the Confirmed Plan and the Confirmation Order.
BG argues that it is not bound by the Confirmed Plan that fixed the amount and priority of Raft's claim, established the rights of creditors to seek disgorgement from each other, and contained disgorgement provisions that deviated from those found in § 726. We find no error in the bankruptcy court's conclusion that all of these issues were resolved by the binding Confirmed Plan, and that BG's litigation of these issues is precluded by the doctrine of res judicata.
*489 The Confirmation Order incorporates the 1997 Order, thereby fixing the amount and also resolving the priority of Raft's claim. Even though the 1997 Order reserved the issue of the priority of Raft's administrative claim in relation to other administrative claims, the bankruptcy court correctly ruled in the Disgorgement Order that "[t]he reservation of a determination of the priority of the Raft claim in the November 12, 1997 stipulated order had an implicit temporal element and expired upon confirmation of the Plan." Appellant's App. at 62; Find. of Fact and Concl. of Law, at Concl. of Law ¶ 7. If the Confirmed Plan had not resolved both the amount and priority of Raft's claim, it would not have provided for Raft's pro rata payment with other administrative claimants. Nor would it have allowed for disgorgement to equalize payments to Raft at the same priority as the Disgorgement Targets.
Further, even if, as argued by BG, the provisions of the Confirmed Plan allowing the Disgorgement Payees to seek disgorgement directly from the Disgorgement Targets rather than all paid administrative claimants are inconsistent with § 726, they are nonetheless binding upon the parties. 11 U.S.C. § 1141(a); Paul, 906 F.2d at 1471 (quoting In re St. Louis Freight Lines, Inc., 45 B.R. 546, 552 (Bankr. E.D.Mich.1984) (party in interest is bound by the terms of a confirmed plan even if it receives less than that to which it is otherwise legally entitled)). BG did not object to the Confirmed Plan's disgorgement provisions at the time of confirmation,[8] and it did not timely appeal the final Confirmation Order. Therefore, it is estopped from raising the legality of the provisions at this late date. Andersen v. UNIPAC-NE-BHELP (In re Andersen), 179 F.3d 1253, 1258 (10th Cir.1999) (a creditor must protect its interest by timely objection to a proposed plan or appealing the confirmation order, and, if it fails to do so, cannot later complain about confirmed plan provisions, even if they are inconsistent with the Bankruptcy Code).
BG also argues that res judicata does not bar it from relitigating issues resolved by the Confirmation Order because the Second Modification was not properly noticed or approved. In particular, BG contends that the alleged defects in the noticing and approval of the Second Modification prevented it from having "a full and fair opportunity to litigate" its claims at confirmation. Plotner, 224 F.3d at 1168 (citing cases). BG also contends that the Confirmed Plan is invalid as it did not receive due process as required under Dalton Development Project v. Unsecured Creditors' Committee (In re Unioil), 948 F.2d 678 (10th Cir.1991), and Reliable Electric, 726 F.2d at 620. These arguments are without merit.
Renoticing modifications to a plan is not required if the modifications are immaterial. Beal Bank, S.S.B. v. Jack's Marine, Inc., 201 B.R. 376, 380 n. 4 (E.D.Pa.1996); In re Cajun Electric Power Coop., Inc., 230 B.R. 715, 730 (Bankr. M.D.La.1999) (citing In re American Solar King Corp., 90 B.R. 808, 823 (Bankr. W.D.Tex.1988) (citing additional authority)); In re Penrod, 169 B.R. 910, 918 (Bankr.N.D.Ind.1994). The Second Modification was immaterial because it merely clarified that a member of the Debtor's owner's family would continue to work as a salesman solely for the Debtor for such time as ownership of the Debtor remained in the family. It did not adversely or materially affect the amount paid to creditors or their claims, and it certainly did not relate to the disgorgement issue of which BG complains. Nor has BG indicated how the Second Modification is material to its disgorgement dispute with Raft, or how it would have changed its position in the case if it had received prior notice. As such, *490 further notice of the Second Modification was not necessary, and lack of such notice and approval did not prevent a "full and fair opportunity to litigate."
Furthermore, the Confirmed Plan and Confirmation Order are binding because the notice that was provided in this case was adequate under the requirements of Unioil and Reliable Electric. The Debtor's disclosure statement, Modified Plan, notice of the confirmation hearing, and ballots were circulated to BG on June 19, 1998.[9] After confirmation of the Confirmed Plan that included the Second Modification, notice of the Confirmation Order was circulated to creditors, including BG. These facts, as established by the record, show that BG received adequate notice of the Modified Plan and the confirmation hearing, and it failed to timely object to confirmation. In addition, BG received adequate notice of the final Confirmation Order, and it failed to timely appeal.
All of the points of error raised by BG are a collateral attack on the Confirmed Plan and Confirmation Order. As concluded by the bankruptcy court, the Confirmed Plan and the Confirmation Order are binding on the parties under § 1141 and principles of res judicata, regardless of whether BG agreed with their provisions. Paul, 906 F.2d at 1471; In re Salina Speedway, Inc., 210 B.R. 851, 855 (10th Cir. BAP 1997); see also United States v. Richman (In re Talbot), 124 F.3d 1201, 1209 (10th Cir.1997) (concluding under analogous provisions that a confirmed chapter 13 plan is res judicata, and its terms are not subject to collateral attack in a disgorgement proceeding brought by Chapter 13 trustee). A confirmation order is a final judgment in the case, and neither it nor the plan that it confirms may be attacked other than by filing a timely appeal. Stoll v. Gottlieb, 305 U.S. 165, 170-72, 59 S.Ct. 134, 83 L.Ed. 104 (1938); Salina Speedway, 210 B.R. at 855-56 (citing cases). Any complaint that BG had with the contents of the Confirmed Plan or in the procedure related to its confirmation should have been resolved by objection thereto and timely appeal. BG failed to do either, and the bankruptcy court was correct in determining that BG may not collaterally attack the binding Confirmed Plan and the final Confirmation Order.
B. The Bankruptcy Court Did Not Err in its Interpretation of the Binding Confirmed Plan.
BG maintains that the Confirmed Plan was an unenforceable contract as a matter of law. It also contests the bankruptcy court's determination that provisions of the Confirmed Plan were ambiguous and that extrinsic evidence was appropriate to interpret it. These arguments are without merit.
The Confirmed Plan is valid and binding on BG. Contrary to BG's arguments, whether the parties had a meeting of the minds as to the disgorgement provisions in the Confirmed Plan is not the guiding standard in this case. Rather, as stated in United States Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.), 150 F.3d 1233 (10th Cir.1998):
[A] reorganization plan has some indicia of a contract. For instance, the interested parties negotiate and draft the document, reach mutual agreement, and consideration is exchanged. Yet, it is also clear a confirmed plan is much more than a contract. For example, once confirmed, a plan is enforceable as a court order against parties who did not even agree to its terms. See 11 U.S.C. § 1141(a).
*491 Id. at 1239; see Paul, 906 F.2d at 1471; Salina Speedway, 210 B.R. at 855. As the bankruptcy court correctly concluded, BG is bound by the terms of the Confirmed Plan even if it had a different understanding of their meaning or did not realize their effect. Turney v. FDIC, 18 F.3d 865 (10th Cir.1994) (the debtor's failure to comprehend what was set before him does not invalidate the provisions of a confirmed plan); DiBerto v. Meadows at Madbury, Inc. (In re DiBerto), 171 B.R. 461, 470-71 (Bankr.D.N.H.1994). Here, the record fully supports the bankruptcy court's findings that BG has sophisticated knowledge of bankruptcy practice and law, and it understood that the Modified Plan would be binding on it upon confirmation. BG's failure to object to the Modified Plan's confirmation was an informed and conscious choice, see n. 10 supra, and its desire to have the Modified Plan confirmed outweighed its desire to press its rights under § 1129(a)(9). Having not objected to the confirmation of the Modified Plan and not timely appealed the final Confirmation Order, BG must abide by the terms of the Confirmed Plan as interpreted by the bankruptcy court.
Not only did the bankruptcy court correctly decide that the Confirmed Plan was binding on BG, but it also did not err in admitting extrinsic evidence, as allowed under applicable state contract law, to resolve the ambiguities therein related to who was subject to disgorgement. C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 817 P.2d 238 (1991) (rejecting "four corners" approach to contract interpretation and allowing admission of extrinsic evidence to aid in interpretation); see Woodcock v. Chemical Bank (In re Woodcock), 45 F.3d 363, 366 (10th Cir.1995) (considering extrinsic evidence in determining meaning of ambiguous term). Based on the evidence presented, the bankruptcy court correctly concluded that only the Disgorgement Targets, not all administrative claimants that had been paid pre-confirmation, were subject to disgorgement under the Confirmed Plan. This conclusion is fully supported by the bankruptcy court's findings of fact that BG, an entity with sophisticated knowledge of bankruptcy practice and law, understood that it was relinquishing potential disgorgement rights from all administrative claimants under § 726 and its rights under § 1129(a)(9) in hopes of obtaining a confirmed plan. These findings are fully supported by the record and are not clearly erroneous.
C. The Bankruptcy Court Did Not Err in Ordering Disgorgement.
Finally, BG asserts the bankruptcy court abused its discretion in ordering disgorgement. It argues that disgorgement is "incredibly rare" in a Chapter 11 case, and that insufficient proof was presented that the reorganized Debtor was incapable of paying the Disgorgement Payees' Plan Claims.
BG misinterprets the applicable standard of review. This case is unlike those cases where bankruptcy courts have discretion to order professionals to disgorge fees if the professional violates or does not ultimately meet the provisions of §§ 327 or 330. Instead, the bankruptcy court was required to enforce the binding Confirmed Plan. It found that all procedures and predicate acts necessary to compel disgorgement under the terms of the Confirmed Plan had been completed. Specifically, the reorganized Debtor had not and could not pay Raft's Plan Claim, and BG had received more than its share. A review of the record reveals ample evidence to support the bankruptcy court's findings on these two points. Having so found, the bankruptcy court had no discretion regarding the disgorgement provisions, and disgorgement was required. Talbot, 124 F.3d at 1207 (plan and confirmation order control disposition of the issue of disgorgement in a confirmed chapter 13 case). We find no error in the bankruptcy court's decision requiring disgorgement.
*492 V. CONCLUSION
For the reasons stated above, the Disgorgement Order is AFFIRMED.
NOTES
[*] After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. Bankr.P. 8012; 10th Cir. BAP L.R. 8012-1(a). The case is therefore ordered submitted without oral argument.
[1] All future statutory references are to title 11 of the United States Code, unless otherwise indicated.
[2] No order or transcript of the October 19, 1999 ruling is included in the record before us, but the substance of the ruling is repeated in a subsequent summary judgment order dated January 5, 2000.
[3] The bankruptcy court concluded that it had jurisdiction to issue the Disgorgement Order in the dispute between BG and Raft pursuant to the Confirmed Plan's retention of jurisdiction provisions, allowing it to issue any order necessary to ensure that Chapter 11 professionals and administrative expense claimants are paid their claims on a pro rated basis. See United States Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.), 150 F.3d 1233, 1237 (10th Cir. 1998) (citing with approval United States Trustee v. Gryphon at Stone Mansion, Inc., 216 B.R. 764, 768-69 (W.D.Pa.1997) for the proposition that a bankruptcy court's "related to" jurisdiction allows it to resolve post-confirmation disputes if the matter sufficiently affects creditors' recoveries under a plan of reorganization).
[4] See 11 U.S.C. § 348; Fed. R. Bankr.P. 1019 (the Advisory Comments to this Rule, which implements § 348, state that it "is not intended to invalidate any action taken in the superseded case before its conversion to chapter 7."); see also 11 U.S.C. § 1144 (citing only fraud as grounds for revocation); Troutman, 253 B.R. at 13 (citing cases) (conversion does not disturb confirmation or revoke discharge); Carter v. Peoples Bank & Trust Co. (In re BNW, Inc.), 201 B.R. 838, 850 (Bankr. S.D.Ala.1996) ("[c]onversion is . . . not a means of vacating a final confirmation order without grounds timely and sufficient under § 1144. . . ."); In re Winom Tool & Die, Inc., 173 B.R. 613, 616 (Bankr.E.D.Mich.1994) (conversion from Chapter 11 to Chapter 7 does not serve to revoke confirmation order); Robb v. Lybrook (In re Lybrook), 107 B.R. 611, 613 (Bankr.N.D.Ind.1989) (conversion does not operate as nullification of earlier orders); Kepler v. Independence Bank (In re Ford), 61 B.R. 913, 917-18 (Bankr.W.D.Wis.1986) ("Nor does the fact that a case is converted to a chapter 7 following the failure of a confirmed plan result in the nullification of all actions by the parties or orders of the court which occurred during the pendency of the unsuccessful plan."); see generally In re Young, 237 B.R. 791 (10th Cir. BAP 1999) (§ 1330, which essentially mirrors the language of § 1144, is the only way to revoke a confirmation order).
[5] Some courts have held that when a Chapter 11 case involving a confirmed plan is converted to Chapter 7, creditors holding pre-confirmation, administrative claims against the estate lose their administrative priority, and are treated as pre-petition, unsecured creditors when seeking recovery from the Chapter 7 estate. See Benjamin Coal Co., 978 F.2d at 826. It is unnecessary for us to determine whether this view is correct because this case does not involve the priority of Raft's Plan Claim in the Chapter 7 scheme, or the recovery or distribution from the Chapter 7 estate. Raft is asserting his Plan Claim arising under the Confirmed Plan against BG, not the Chapter 7 estate.
[6] Although there is some confusion between the use of the terms "Debtor" and "Reorganized Debtor," which are used interchangeably in the Confirmed Plan, it appears that all assets vested in the entity that existed post-confirmation, or the reorganized Debtor. There was no trust created for the exclusive benefit of creditors such as in Pioneer Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortgage Entities), 248 B.R. 368 (9th Cir. BAP 2000) (concluding that a Chapter 11 plan that created a trust for the exclusive benefit of creditors had a fiduciary duty to those for whose benefit it was created). In any event, the distinction is not important in this case because the right to obtain payment from the Disgorgement Targets transferred to Raft upon the Debtor's failure to seek disgorgement upon demand.
[7] There are divergent rulings as to the composition of a Chapter 7 estate when a Chapter 11 plan is confirmed pre-conversion. See Troutman Enters., 253 B.R. at 5 (gathering cases). Some courts hold that, upon confirmation of a Chapter 11 plan, all estate assets vest in the reorganized debtor and that no assets remain for inclusion in the Chapter 7 estate. Others conclude that the Chapter 7 estate includes property that was held by the reorganized debtor on the date of conversion. Under either line of cases, the right to seek disgorgement in this case is not included in the Chapter 7 estate because it transferred to Raft pre-conversion.
[8] Had it done so, apparently the Debtor would have immediately sought disgorgement orders in conjunction with confirmation.
[9] The affidavit of Jennie Deden Behles states that because BG determined that the finances of the Debtor must have become substantially worse, "it would be futile to expend funds in further objecting to the First Amended Plan and Disclosure Statement since the unsecured creditors' committee was carrying that objection." Appellant's App. at 664; Behles Aff. ¶ 22.