## In re RIVIERA DRILLING & EXPLORATION COMPANY, Debtor.

**Thurner Industries, Inc., Thurner Explorations, Inc., T Investment Group, Vicon, Inc., Timothy Thurner, individually and as successor in interest to an undivided 50% of the interest held in the name of the Thurner Heat Treating Corporation Employees' Profit Sharing Plan, an Erisa Trust, Scott Thurner, individually, and as trustee for The Doris Thurner Family Trust, and as successor in interest to an undivided 50% of the interest held in the name of the Thurner Heat Treating Corporation Employees' Profit Sharing Plan, an Erisa Trust, Samuel**

**Thurner, individually and as successor in interest to one fourth of the Robert E. Thurner Family Trust, Sally Thurner, individually and as successor in interest to one fourth of the Robert E. Thurner Family Trust, Holly Thurner, individually and as successor in interest to one fourth of the Robert E. Thurner Family Trust, The Doris Thurner Family Trust, by and through Scott Thurner, Trustee, and 350 Saint Paul, LLC, Appellants,**

v.

**Gunnison Energy Corporation, Appellee.**

**BAP No. CO–12–112.**

**Bankruptcy No. 10–11902.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 17, 2013.

a tax lien may extinguish the Operating Covenant, but it would not give a "money satisfaction" of the Operating Covenant.

T. Edward Williams of Benjamin, Bain, Howard and Cohen, LLC, Greenwood Village, CO, for Appellants.

Michael J. Pankow (Joshua M. Hantman with him on the brief) of Brownstein Hyatt Farber Schreck, LLP, Denver, CO, for Appellee.

Before MICHAEL, NUGENT, and SOMERS, Bankruptcy Judges.

## OPINION

NUGENT, Bankruptcy Judge.

Section 1121(e) of the Bankruptcy Code[1] provides that in small business Chapter 11 cases, only the debtor may file a plan of reorganization in the first 180

---

1. 11 U.S.C. § 101, et seq. All future refer- ences to "Code," "Section," and "§ " are to

days after the case's filing.[2] The court may extend the debtor's exclusivity period for a longer time, but § 1121(e)(2) says that "*the* plan and disclosure statement . . . shall be filed not later than 300 days after the date of the order for relief." [3] In this case, after the 300–day deadline had passed, a creditor, appellee Gunnison Energy Corporation ("GEC"), filed a plan of liquidation. At issue is whether § 1121(e) permits a creditor to file a plan after the 300–day deadline expires without being extended. The court confirmed GEC's plan thirty-four months after the order for relief and after the debtor's plan and amended plan were denied confirmation. The debtor's principals, the Thurners, argued below that the 300–day deadline bars creditors and debtors alike from proposing plans once the time has expired, and that instead of confirming the GEC plan, the bankruptcy court should have dismissed the case. Though few courts have spoken to this particular question, we conclude that the 300–day deadline applies to the debtor alone and that the judgment of the bankruptcy court should be AFFIRMED.

## I. Factual Background

The debtor, Riviera Drilling and Exploration Company ("Riviera"), owns a 43% interest in several oil and gas leases in Colorado (the "Leases"). Scott, Sam, and Jacob Thurner, and various trusts and corporate entities established by them (collectively the "Thurners") own the other 57% interest in the Leases. GEC owns a pipeline that transports gas from the Thurner–Riviera wells and the parties have a history of disputes over the transmission of·gas from these Leases.

Riviera filed a small business Chapter 11 case in the District of Colorado on February 2, 2010. In August of 2010, Riviera proposed a plan which was not confirmed. GEC filed a motion to convert or dismiss the case. In November of 2010, Riviera proposed a second plan and, at a November 30 hearing on the motion to dismiss, the bankruptcy court directed Riviera to file a motion to extend time to confirm its plan by December 6, 2010. Riviera did so, but on December 15, 2010, the court appointed a Chapter 11 trustee and, on January 3, 2011, denied the extension motion. The Chapter 11 trustee then attempted to close a § 363 sale of 100% of the Leases. When that sale fell apart, the trustee filed an adversary proceeding against the Thurners seeking to sell the properties, to equitably subordinate the interests of the Thurners to the general creditors, and substantially consolidate the leasehold interests of the Thurners with the debtor's estate (the "Adversary").[4] That Adversary remains pending. On June 14, 2012, several years after the case was filed, the trustee moved to convert the case to a Chapter 7. GEC responded to this motion by filing a plan (the "Plan").[5]

The Plan provided that GEC would offer $600,000 in immediate financing to the es-

---

title 11, United States Code, unless otherwise specified.

2. A "small business" debtor is a debtor engaged in commerce or business with aggregate liquidated debts of not more than $2.19* million in a Chapter 11 case in which the United States trustee has not appointed a committee of unsecured creditors. § 101(51D) (* the adjusted rate effective on the date of petition).

3. § 1121(e)(2) (emphasis added).

4. Complaint in Adv. No. 12–01079, *in* App. 242–60. The Trustee seeks (1) substantive consolidation of the non-Riviera lease interests into the bankruptcy case; (2) equitable subordination of Riviera insider claims; and (3) avoidance and recovery of roughly $110,000 in fraudulent transfers made to Jacob Thurner.

5. Amended Chapter 11 Plan Filed by GEC dated August 31, 2012, *in* App. 547–68.

tate to fund the payment of allowed administrative expenses, make an initial 10% dividend distribution to the general unsecured creditors, and finance post-confirmation operations including prosecution of the Adversary to its conclusion.[6] In exchange, the reorganized debtor would sell 100% of the lease interests to GEC upon substantive consolidation of the Thurners' interests into the estate. If substantive consolidation did not occur, GEC was to receive all of Riviera's assets, including its lease interests, in payment for the Plan financing it provided.[7] The Plan also provided for the appointment of a plan administrator to replace the trustee as the plaintiff in the Adversary and to administer the estate as the Plan provided.[8]

The Thurners objected to confirmation of the Plan on a variety of grounds, including their assertion that because the 300–day period for plan filing had not been extended, GEC was barred from filing a plan. After an evidentiary hearing, the bankruptcy court confirmed the Plan and concluded in a reasoned order that the 300–day deadline applies only to plans filed by a debtor, not by other proponents (the "Confirmation Order"). The court then

6. *Id.* at 8, *in* App. at 557.

7. *Id.* at 8, ¶ 6.03(b), *in* App. at 557.

8. *Id.* at 11–13, ¶ 8.02, *in* App. at 560–62.

9. Appellants' Notice of Appeal ("NOA") lists only the Order on Confirmation as the order appealed from, but Appellants also linked the Order Confirming Plan to the notice. Since it's clear they meant to appeal both orders and the Order Confirming Plan is the execution of the rulings in the Order on Confirmation, we construe the NOA as appealing both orders but shall simply refer to them collectively as the "Confirmation Order."

10. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

entered a separate confirmation order. The Thurners appeal both of these orders.[9] They sought stay pending appeal, but the court denied their request.

## II. Appellate Jurisdiction

This Court has jurisdiction to hear timely filed appeals from final orders, final collateral orders, and, with leave of court, interlocutory orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[10] The Thurners timely filed their notice of appeal from the bankruptcy court's final order and the parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of Colorado.[11]

But even when a timely appeal of a final order is made to this Court, we lack jurisdiction to review it if the appellant lacks standing to bring the appeal.[12] In addition to the interpretation of § 1121, this appeal raises issues of standing and equitable mootness. To determine whether we have jurisdiction of the appeal and whether we should proceed to the merits, we address these two issues first.[13]

11. *In re K.D. Co., Inc.*, 254 B.R. 480, 490 (10th Cir. BAP 2000) (Chapter 11 plan confirmation order is a final judgment.).

12. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.").

13. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 73, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (court has obligation to satisfy itself that it has jurisdiction to hear appeal) (quoting *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *In re Phila. Newspapers, LLC*, 690 F.3d 161, 168 (3rd Cir.2012) (Equitable mootness is a way for an appellate court to avoid deciding the merits of a bankruptcy appeal by dismissing the appeal, even if it has

## A. Standing

■ Standing to appeal is limited to those "aggrieved" by a bankruptcy court's order.[14] Under the "persons aggrieved" standard, parties will have standing to appeal a bankruptcy court order only if their "rights or interests are directly and adversely affected pecuniarily by the decree or order of the bankruptcy court."[15] Here, GEC claims that the Thurners' grievance is based merely on their legal argument about the meaning of § 1121(e) and that they are not truly "aggrieved" because they have no pecuniary interest at stake. GEC argues that absent the Plan's confirmation, there would be no funds to distribute to any unsecured creditors or interest holders, including the Thurners. This argument ignores the economic reality that a sale of Riviera's minority interest in the gas wells lays the Thurners open to being forced to partner with the entity they claim destroyed Riviera, or to buy out the balance of the gas interests, something they plainly lack the wherewithal to do. Even though the Thurners may have nothing to say about the disposition of the Riviera interests, that disposition certainly affects their economic interests. That suffices to give them standing to appeal.

## B. Equitable mootness

■ The equitable mootness doctrine allows a court to decline to hear a bankruptcy appeal "even when relief could be granted, if implementing the relief would be inequitable."[16] This doctrine can be applied to appeals from orders confirming Chapter 11 plans. When it is applied, courts look to a six factor test that focuses on whether the plan has been consummated and whether unscrambling the consummated plan would unfairly affect creditors, third parties, or the public interest.[17] But courts may also exercise their discretion in fashioning a remedy in cases seeking equitable relief. Included in the scope of that discretion is the option to resolve the appeal on the merits.[18] Whether GEC was barred from filing a plan by the operation of a statute that has rarely been interpreted since its 2005 enactment is an important question in this and other cases and one that goes to the heart not only of the Thurners' interests here, but to GEC's right to proceed as it has in this case.

The Thurners argue that if we reverse the Confirmation Order, the bankruptcy court can still convert the case or dismiss it.[19] GEC responds with a declaration by the plan administrator stating that he has taken over the assets, that GEC has begun financing Riviera's operations, that GEC

jurisdiction and can grant relief, if implementation of that relief would inequitable.)).

**14.** *In re Kopexa Realty Venture Co.,* 240 B.R. 63, 65 (10th Cir. BAP 1999).

**15.** *Holmes v. Silver Wings Aviation, Inc.,* 881 F.2d 939, 940 (10th Cir.1989) (internal quotation marks omitted).

**16.** *In re C.W. Mining Co.,* 641 F.3d 1235, 1239–40 (10th Cir.2011).

**17.** *In re Paige,* 584 F.3d 1327, 1337–43 (10th Cir.2009).

**18.** *C.W. Mining,* 641 F.3d at 1240.

**19.** The Thurners also argue that the prudential mootness doctrine does not apply where the issue involves a challenge to the court's authority to confirm a plan, citing *In re Combined Metals Reduction Co.,* 557 F.2d 179 (9th Cir.1977). But that case does not say that. Rather, the Ninth Circuit was of the opinion that the appeal of the confirmation order was not moot because the plan still controlled the actions of the trustee even though much of the estate property had been liquidated and many creditors had been paid. *Combined Metals* is factually distinguishable because the debtor was unquestionably solvent and its only problem was an inability to meet current liabilities, while our debtor is insolvent and the trustee is out of the picture.

indeed purchased one of Riviera's accounts receivable, and that he has distributed over $70,000 to unsecured creditors. In addition, he has disbursed almost $200,000 for qualified administrative expenses, and incurred approximately $35,000 in fees and expenses in connection with the pending adversary.[20] GEC says that reversal of the order would prejudice the estate by reinstating the Chapter 11 trustee who has no means of operating the business. And, those creditors who expect full payment under the confirmed plan would receive nothing.

■■■■ The Tenth Circuit's six factor test of equitable mootness includes the following questions: (1) Was a stay pending appeal entered? (2) Has the plan been substantially consummated? (3) Have the rights of third parties been affected? (4) Would reversing the order affect public policy? (5) What is the chance of a successful reorganization after reversal? And (6) are the appellants' claims legally meritorious?[21] "These six factors are not necessarily conclusive, nor will each factor always merit equal weight."[22] As noted above, application of the doctrine of equitable mootness is within the court's discretion.[23] The party claiming equitable mootness applies bears the burden of demonstrating mootness.[24]

■■■■ The Thurners sought a stay, but no stay was entered because they could not place a bond. Thus, this factor weighs against proceeding to the merits, but is not dispositive. More important is whether the plan has been substantially consummated. "Substantial consummation" is defined in the Code as:

(A) transfer of *all or substantially all* of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.[25]

The plan administrator has assumed management of all estate property and has made substantial distributions under the Plan; but the centerpiece of the Plan, namely the sale of the lease interests to GEC following substantive consolidation of the Thurners' lease interests into the estate, has not occurred. Thus the transfer of "all or substantially all" of the property to be transferred under the Plan has yet to occur. The Plan then has not been substantially consummated. GEC funded the Plan and certain consequences have accrued, but certainly none that would be a nightmare to undo.[26] The substantial consummation factor does not weigh in GEC's favor.[27]

---

**20.** Declaration of Thomas M. Kim at 12, *in* Appellee's Appendix at 622. This declaration is the subject of GEC's motion to supplement the record, which states that Appellants object, yet they filed no response. We grant GEC's motion to supplement as this information is critical to this Court's assessment of mootness.

**21.** *Paige*, 584 F.3d at 1339.

**22.** *Id.*

**23.** *Id.* at 1335 (adopting abuse of discretion standard of review for determinations of equitable mootness in bankruptcy cases).

**24.** *Id.* at 1339–40.

**25.** 11 U.S.C. § 1101(2) (emphasis added).

**26.** *In re Pub. Serv. Co.*, 963 F.2d 469, 474 (1st Cir.1992) (reversal " 'creat[ing] a nightmarish situation for the bankruptcy court on remand' ... mak[ing] reconstructive relief extremely improbable") (quoting *In re Texaco, Inc.*, 92 B.R. 38, 50 (S.D.N.Y.1988)).

**27.** Under the doctrine of equitable mootness, substantial consummation of reorganization plan is a momentous event, but it does not necessarily make it impossible or inequitable for appellate court to grant effective relief. *In*

██ The rights of third parties have been affected in that creditors have received some minimal payment, a small receivable ($10,000) has been transferred to GEC for value, and GEC has committed funds to the plan administrator who has incurred administrative expense. But none of these are effects that could not be remedied were we to reverse the Confirmation Order.[28] And, concerning the effect on public policy, GEC took the actions it did in reliance on the Confirmation Order, but few other parties have changed position. GEC took those actions knowing that the confirmation order was not final. Whether the Thurners could successfully reorganize Riviera is not relevant here because the remedy they seek is dismissal. Finally, as to whether the Thurners' argument on appeal has merit, only a few courts have considered how and to whom the 300–day limit should be applied and only one has considered that in a factual context similar to this one. This factor weighs in favor of considering the merits. Although it is undoubtedly a close question, under these circumstances we prefer to reach the merits of this appeal.

## III. Discussion

On appeal, the Thurners argue that on its face, § 1121(e)(3)'s 300–day limitation for filing a Chapter 11 plan applies not only to small business debtors, but to all parties in interest and that because the Plan was filed after the expiration of the 300–day deadline, the case should have been dismissed or converted.

## A. Section 1121 Establishes Who May File a Plan and When.

██ Section 1121 establishes that the debtor may file a plan at any time during a case and sets certain time periods during which the debtor has the exclusive right to propose and confirm a Chapter 11 plan. These are generally referred to as "exclusivity periods." Section 1121(b) provides that only the debtor may file a plan during the first 120 days after the order for relief. Section 1121(c)(3) states that any other party in interest may propose a plan only if the debtor has not filed a plan that has been accepted before 180 days after the order for relief. That provision effectively grants the debtor a 180–day exclusivity period in which to confirm its plan. If, however, the debtor fails to file a plan within the 120–day period, or if a Chapter 11 trustee has been appointed, the debtor's exclusive periods expire and others may file plans. Section 1121(d) allows for a party in interest to request an extension of either the 120–or 180–day periods and, after notice and hearing, and upon a showing of cause, the court may reduce or extend them, provided that the 120–day period not be extended beyond 18 months after the order for relief and the 180–day period beyond 20 months.

██ Congress has established a different set of time limits for small business debtors in § 1121(e). Small business debtors are defined as debtors who are engaged in certain commercial or business activities and whose debts do not exceed a certain debt ceiling.[29] Congress substan-

re Manges, 29 F.3d 1034, 1042–43 (5th Cir. 1994).

**28.** We reject the Thurners' argument that neither the trustee nor the plan administrator constitute third parties for purposes of the mootness analysis as they played a pivotal role in the bankruptcy proceedings. They are nonparties to the appeal so the effects of reversal on them should be considered.

Paige, 584 F.3d at 1343 ("The effects that reversal will have on non-party creditors is probably the foremost concern in our analysis of equitable mootness.").

**29.** See § 101(51D) (providing for a ceiling that is currently $2.343 million and excluding from this category of debtor one whose primary activity is operating real property).

tially amended several sections of Chapter 11 pertaining to small business filers in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.[30] It revised § 1121(e) to provide that in a small business case—

(1) only the debtor may file a plan until after 180 days after the date of the order for relief, unless that period is—

(A) extended as provided by this subsection, after notice and a hearing; or

(B) the court, for cause, orders otherwise;

(2) *the* plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief; and

(3) the time periods specified in paragraphs (1) and (2), and the time fixed in section 1129(e) within which the plan shall be confirmed, may be extended only if—

(A) the debtor, after providing notice to parties in interest (including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;

(B) a new deadline is imposed at the time the extension is granted; and

(C) the order extending time is signed before the existing deadline has expired.[31]

If the debtor files a plan within the timelines established under § 1121(e), § 1129(e) requires that the court confirm a plan "that is filed in accordance with § 1121(e)" not later than 45 days after its filing unless the time is extended "in accordance with § 1121(e)(3)."[32] As amended by the 2005 act, § 1112(b)(4)(J) defines cause for dismissal or conversion as failure to file or confirm a plan "within the time fixed by this title."

Formerly, § 1121(e) provided that (1) only the small business debtor could file a plan until 100 days after the order for relief and that (2) "all plans" were to be filed within 160 days from the order for relief.[33] "On request of a party in interest," the court could reduce the 100–day period or extend it for cause "if the debtor shows that the need for an increase is caused by circumstances for which the debtor should not be held accountable."[34] Before BAPCPA, there was no 45–day (or any other) time limitation on confirmation like that contained in § 1129(e). Former § 1112(b)(4) provided that failing to file a plan within the "any time fixed by the court" was cause for dismissal or conversion, as was denial of confirmation under former § 1112(b)(5).[35]

## B. Section § 1121(e)'s Deadlines Apply to Small Business Debtors.

Most of the cases that address plans filed after the 300–day limit concern debtors' plans and have concluded that once that time passes without being extended or without a plan being filed, cause to dismiss or convert the case exists. We agree with these courts that "[t]he timing requirements of § 1121(e) were imposed to

---

**30.** *Compare* §§ 1121(e) and 1129(e) (2005) *with* §§ 1121(e) and 1129(e) (1994).

**31.** § 1121(e) (emphasis added).

**32.** § 1129(e).

**33.** Former § 1121(e)(1) and (2).

**34.** Former § 1121(e)(3).

**35.** BAPCPA made few changes to the other timing provisions in § 1121 that govern non-small business cases other than to impose an 18–month outside limit on extensions of a debtor's § 1121(c)(2) exclusive period in which to file a plan and a 20–month outside limit on extensions of the § 1121(c)(3) time to confirm that plan.

closely supervise small business debtors and to manage these cases in an expedited manner." But they do not agree on how these timing requirements should be applied.

In *In re Randi's Inc.*, the debtor filed its first plan after the 300 days had expired; then the debtor filed a motion to extend the 300–day period 51 days after its expiration.[36] On day 385, the debtor's sole shareholder filed her own plan, one that was identical to the debtor's plan. The court found that because no plan had been filed before the terminal deadline, neither of the proposed plans could be confirmed.[37] In *In re Castle Horizon Real Estate, L.L.C.*, the debtor filed a plan within the appropriate time period and obtained an extension of the 45 day confirmation deadline.[38] But the debtor's amended plan, filed 396 days after the petition and without an extension of the time limits, was substantially different from the original plan. The *Castle Horizon* court concluded that "[s]mall business debtors cannot file any plan in order to remove the 300–day deadline in § 1121(e)(2) and carry on the confirmation process beyond 300 days from the order for relief."[39] It then dismissed the case. Finally, in *In re Sanchez*, the debtor's failure to secure an extension of the 180–day exclusive filing deadline and failure to file a plan before the 300th day resulted in the court's issuing an order to show cause why the case should not be dismissed under § 1112(b)(4)(J).[40] The court had previously denied a motion to extend the filing

times because the debtor failed to establish that the court would likely confirm a plan in a reasonable time. After the court issued its show cause order, the U.S. Trustee weighed in with a motion to dismiss. Noting that the expedited Chapter 11 process for small businesses was designed to "keep small business cases on a short leash," the *Sanchez* court concluded that the 300–day period was a "drop dead" term that deprived the court of any judicial discretion in the matter and dismissed the case.[41]

### C. Section 1121(e) Does Not Address Creditors' Plans, But § 1121(c) Does.

None of the cases discussed above involve plans filed by creditors. The only reported case, other than this one, in which a bankruptcy court has considered the effect of § 1121(e) in the context of plans filed by parties other than small business debtors is *In re Florida Coastal Airlines, Inc.*[42] Congress did not provide for or consider this eventuality in a small business case.[43]

In *Florida Coastal*, the debtor waited to file a plan until after the 180–day exclusivity period expired. Without seeking to have that or the 300–day period extended, the debtor filed its plan on day 209. It amended that plan on day 309 and a creditor filed its plan on day 317. First, the court concluded that the debtor's amended plan was "a fundamentally cleaned up version of its original plan" that "related back" to the date of the original plan.

36. *In re Randi's Inc.*, 474 B.R. 783 (Bankr. S.D.Ga.2012).

37. *Id.* at 785–86.

38. *In re Castle Horizon Real Estate, LLC*, No. 09–05992, 2010 WL 3636160, at *1 (Bankr. E.D.N.C. Sept. 10, 2010).

39. *Id.* at *2.

40. *In re Sanchez*, 429 B.R. 393 (Bankr.D.P.R. 2010).

41. *Id.* at 398.

42. 361 B.R. 286 (Bankr.S.D.Fla.2007).

43. 6 Hon. William L. Norton Jr. & William L. Norton III, *Norton Bankr.Law & Practice 3d*, § 108:5, at 108–14 (2013).

Then, turning to the creditor's plan, the court carefully parsed the language of § 1121(e)(2) to conclude that since "only the debtor" can file "a" plan until after the exclusive period expires, and since "the" plan "shall be filed not later than 300 days after the ... order for relief," "the plan" in (e)(2) must refer to "a plan" that the debtor filed under (e)(1).[44] The court noted the difference in language between the current law and former § 1121(e)(2) which spoke of "all plans," as opposed to "the plan," being filed by the terminal date. In addition, because only the debtor can obtain an extension of the 180– and 300–day limits under (e)(3), the court found it "absurd" to bind the creditors to a 300–day deadline that only the debtor could seek to extend. Prior law provided for a "party in interest" to request an extension of the 160–day terminal period and former § 1121(e)(3)(B) expressly required that the debtor show that "the need for an increase" of the 100–day exclusive period was caused by circumstances outside the debtor's control.[45] Current § 1121(e)(3)'s requirement that the debtor seek and demonstrate the basis for an extension applies to all three time periods, the 180–day exclusive filing period, the 300–day terminal period, and the 45–day confirmation period set out in § 1129(e). The *Florida Coastal* court concluded that the 300–day deadline only applies to the debtor and that there is no statutory deadline for any other party in interest. That court allowed both plans to proceed to a confirmation hearing.

This case better resembles the fact pattern in *Florida Coastal* than it does the other cases interpreting § 1121(e). Here, the debtor filed several plans, the court then appointed a Chapter 11 trustee and, long after the 300–day deadline had expired, GEC filed a creditor plan, but only after the trustee filed a motion to convert the case to Chapter 7 to which GEC and several other parties in interest objected. In none of the other cases is there a meaningful competing creditor's plan.[46] The bankruptcy court here also concluded that confirmation of the GEC plan better served the best interest of the creditors and the estate than did granting either of the pending conversion motions and, based on the reasoning in *Florida Coastal*, it confirmed the GEC plan.

In these circumstances, we agree that applying the § 1121(e) 300–day deadline to defeat a result that is otherwise beneficial to the creditors and the estate makes little sense, particularly in light of the changes BAPCPA made to former § 1121(e) and the differences between small business and ordinary Chapter 11 cases. We also agree with the reasoning in *Florida Coastal* that it would be absurd to condition allowing the confirmation of an otherwise confirmable creditor's plan on the debtor's taking action to extend the plan periods and that the change in the statutory language puts the onus on the debtor to request an extension of time in which to file *its* plan, not *any* plan.

 But there is an even more compelling reason to affirm here.[47] In a non-

---

44. *Florida Coastal,* 361 B.R. at 291.

45. Former § 1121(e)(3).

46. Recall that the *Randi's* court concluded that the shareholder plan filed there was virtually identical to that filed by the debtor.

47. The BAPCPA's legislative history also supports our holding. *See* H.R. Rep. 109–31(I), 92, *reprinted in* 2005 U.S.C.C.A.N. 88, 158:

Sec. 437. Plan Filing and Confirmation Deadlines. Section 437 of the Act amends section 1121(e) of the Bankruptcy Code with respect to the period of time within which a small business debtor must file and confirm a plan of reorganization. This provision provides that a small business debtor's exclusive period to file a plan is 180 days from the date of the order for relief, unless the period is extended after notice and a hearing, or the court, for cause, or-

small business case, § 1121(b) and (c) establish the exclusivity periods. Non-debtor parties may file plans once the debtor has filed a plan and the exclusive period in which to confirm that plan has expired.[48] Or, as happened this case, once a Chapter 11 trustee is appointed, a non-debtor party may file a plan whether the debtor's exclusive period has expired or not.[49] Reading § 1121(e) with the rest of the section causes us to conclude that its purpose is to limit the time periods for debtors to file and confirm plans, not to address the consequences of other parties filing plans. We should read subsection (e) in context with the rest of the statute. As another court has stated, "Section 1121(e) should not be read in a vacuum."[50] Read in this way, the debtors' § 1121(b) exclusivity period is extended to 180 days in small business cases by § 1121(e)(1). The plan must be filed not later than 300 days after the order for relief, unless that period or the 180–day period are extended on motion of the debtor and if the debtor carries its burden to prove the likelihood that a plan will soon be confirmed. But if the debtor fails to file a plan within either the 180–day or 300–day periods, and if those periods are not extended, nothing in subsection (e) limits the clearly-established § 1121(c) right of creditors to file their

plans provided one of the conditions in that subsection (as modified by the subsection (e) timelines) exists. Even § 1129(e)'s 45–day confirmation deadline may be read in a consistent manner because it specifically makes that deadline apply to plans that are "filed in accordance with § 1121(e)"—plans timely filed by debtors.

In this case, when the court appointed a Chapter 11 trustee, the debtor's exclusivity period expired under § 1121(c)(1), opening the door to any party in interest to file a plan. Because the 300–day deadline applies to debtors alone, the Bankruptcy Court could consider and confirm GEC's plan at any time.

## IV. Conclusion

■ The small business amendments in BAPCPA were aimed at giving small business debtors an extendable, but limited and definite time period in which to formulate and confirm a plan. They say nothing about creditors plans, leaving us to look to the rest of § 1121, which sets out the conditions for other parties in interest to file plans, as a guide. Once the Chapter 11 trustee was appointed in this case, creditors were free to file a plan at any reasonable time. Accordingly, the Bankruptcy Court correctly held that § 1121(e)'s 300–

---

ders otherwise. It further provides that a small business debtor must file a plan and any disclosure statement not later than 300 days after the order for relief. These time periods and the time fixed in section 1129(e) may be extended only if: (1) the debtor, after providing notice to parties in interest, demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time; (2) a new deadline is imposed at the time the extension is granted; and (3) the order granting such extension is signed before the expiration of the existing deadline.

Sec. 438. Plan Confirmation Deadline. Section 438 of the Act amends Bankruptcy Code section 1129 to require the court to confirm a plan not later than 45 days after it is filed if the plan complies with the applicable provisions of the Bankruptcy Code, unless this period is extended pursuant to section 1121(e)(3).

48. § 1121(c)(2) and (c)(3).

49. § 1121(c)(1).

50. *See In re Aspen Limousine Serv., Inc.,* 193 B.R. 325, 333 (D.Colo.1996).

day deadline does not apply to plans filed by creditors and its order is AFFIRMED.