In re Richard Alvin **BENNETT**, also known as Rusty A. Bennett; and Pamela Marie Bennett, Petitioners.

BAP No. NM–02–031.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 23, 2002.

---

Submitted on the briefs: *

Jennie Deden Behles of J.D. Behles & Associates, Albuquerque, NM, for Petitioners.

Joel Pelofsky, United States Trustee, and Ronald E. Andazola, Assistant United States Trustee, Albuquerque, NM, for Respondent United States Trustee.

Before CLARK, BOHANON, and NUGENT, Bankruptcy Judges.

## OPINION

CLARK, Bankruptcy Judge.

Richard Alvin and Pamela Marie Bennett ("Debtors" or "Petitioners"), by and through their attorney, Jennie Deden Behles ("Behles") of J.D. Behles & Associates, P.C. ("Behles Firm"), appealed an "Order Granting Motion to Reconsider and Order Reaffirming Prior Order on Disqualification" ("Reconsideration Order") entered by the Honorable James S. Starzynski, Bankruptcy Judge for the United States Bankruptcy Court for the District of New Mexico ("Judge Starzynski"). The Reconsideration Order expressly incorporates Judge Starzynski's previous "Order Denying Debtors' Motion for Disqualification of Bankruptcy Judge and Motion Pursuant to 28 U.S.C. Section

* After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

455" ("Disqualification Order") and his related "Memorandum Opinion on Debtors' Motion for Disqualification of Bankruptcy Judge and Motion Pursuant to 28 U.S.C. Section 455" ("Memorandum Opinion"). In the Disqualification Order and the Reconsideration Order, Judge Starzynski refused to recuse himself from the Debtors' Chapter 12 case.

This Court treated the Petitioners' Notice of Appeal as a Petition for Writ of Mandamus ("Petition"), because such a Petition is the proper avenue to seek review of an interlocutory order involving a Judge's refusal to recuse him or herself from a case or proceeding. *See, e.g., Nichols v. Alley,* 71 F.3d 347, 350 (10th Cir. 1995) (per curiam); *Lopez v. Behles (In re American Ready Mix, Inc.),* 14 F.3d 1497, 1499 (10th Cir.), *cert. denied,* 513 U.S. 818, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994). The United States trustee ("UST") has responded to the Petitioners' Petition. For the reasons stated below, the Petition is DENIED.

## I. *Background*

The Behles Firm and the Debtor Petitioners both requested that Judge Starzynski recuse himself from the Debtors' Chapter 12 case. These requests were based on allegations related to Judge Starzynski's actions in an unrelated bankruptcy case, *In re K.D. Company,* 254 B.R. 480 (10th Cir. BAP 2000) ("KD Case"), and his actions in the Debtors' Chapter 12 case. Set forth below is a history of the relevant facts related to the KD Case and the Debtors' Chapter 12 case that we have been able to ascertain from the record, a summary of the Behles Firm and the Debtors' motions for disqualification and the allegations against Judge Starzynski, and a brief summary of the disqualification proceedings below.

### A. *The KD Case*

In 1996, K.D. Company, Inc. ("KD") filed a petition seeking relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Mexico. The bankruptcy court approved the Behles Firm as KD's bankruptcy counsel, and during its employment it was paid at least a portion of its fees and costs as an administrative expense. At some point, the Behles Firm withdrew as KD's bankruptcy counsel and Judge Starzynski, who at this time had not been appointed as a Bankruptcy Judge, and his law firm, Francis & Starzynski, P.A. ("Francis Firm"), were employed as successor bankruptcy counsel to KD. As KD's counsel, the Francis Firm received a portion of its requested fees and costs as an administrative expense.

In November 1997, a stipulated order was entered in the KD Case, over the objections of the Behles Firm, allowing Martin Raft, a real property lessor ("Raft"), an administrative expense against KD. KD did not pay Raft's administrative expense claim prior to or at the time of the confirmation of its plan. Rather, a plan was confirmed in the KD Case allowing Raft to seek *pro rata* disgorgement from entities whose administrative expenses were paid by KD in the Chapter 11 case if the reorganized KD was unable to pay all administrative expense claims in full.

Reorganized KD ultimately determined that it could not pay its administrative expense claims in full. Thus, in 1999, Raft commenced an action against, among others, the Behles Firm and the Francis Firm, seeking disgorgement of administrative expenses that KD had paid to them ("Raft Disgorgement Action"). When the Raft Disgorgement Action was filed, Judge Starzynski had been appointed as a Bankruptcy Judge. The Francis Firm or Judge Starzynski or both asserted claims against

co-defendants in the Raft Disgorgement Action, including the Behles Firm, claiming that, if administrative expenses were to be reallocated to afford Raft and other administrative claimants a *pro rata* distribution, it was entitled to disgorgement from its co-defendants because it had been paid less than its proportionate share of administrative expenses.

Other than the Behles Firm, all of the defendants in the Raft Disgorgement Action either defaulted or settled with Raft. Furthermore, the Francis Firm or Judge Starzynski or both settled with all of the co-defendants, other than the Behles Firm, and at least some of the co-defendants agreed that they were required to pay the Francis Firm or Judge Starzynski or both ("Starzynski Settlement Payment"). In February 2000, just prior to a trial to determine whether the Behles Firm was required to disgorge some of the fees that it had been paid, any claim that Judge Starzynski or the Francis Firm or both might have had against the Behles Firm was waived.

At the trial,[1] Judge Starzynski served as a witness for Raft and was subpoenaed by the Behles Firm. The bankruptcy court eventually entered a judgment in favor of Raft against the Behles Firm, requiring the Behles Firm to disgorge $40,000 in fees ("Raft Judgment"). The Raft Judgment was appealed to this Court by the Behles Firm. *See In re KD Company*, 254 B.R. 480 (10th Cir. BAP 2000). We affirmed the bankruptcy court's judgment against the Behles Firm, holding that the bankruptcy court did not err in barring the Behles Firm's collateral attack of the confirmation order in KD's Chapter 11 case or in its interpretation of KD's binding confirmed plan. We also concluded that the bankruptcy court did not err in ordering disgorgement pursuant to the terms of the confirmed plan in the KD Case, despite any argument by the Behles Firm that such a remedy was "incredibly rare." *Id.* at 482.

B. *Judge Starzynski's Actions Related to the Behles Firm's Employment in the Debtors' Chapter 12 Case and the Behles' Firm's Recusal Motion*

In March 2000, after Judge Starzynski or the Francis Firm or both had waived claims against the Behles Firm in the Raft Disgorgement Action, the Debtors filed a petition seeking relief under Chapter 12 of the Bankruptcy Code. Judge Starzynski, who had been a Bankruptcy Judge since August 1998, was assigned to the case. The Behles firm promptly applied to represent the Debtors in their Chapter 12 case ("Employment Motion"). Attached to the Employment Motion was an "Attorney Client Agreement," signed by the Debtors. No objections were filed to the Employment Motion.

On June 1, 2000, Judge Starzynski entered an order, which had been submitted by the Behles Firm in conjunction with the Employment Motion, approving the Behles Firm's employment without conducting a hearing ("Employment Order"). The form of the Employment Order was modified by Judge Starzynski *sua sponte* to reduce the hourly rates disclosed in the Attorney Client Agreement of various Behles Firm professionals. Judge Starzynski ordered, however, that the Behles Firm could request higher rates in the future. He also stated that the Behles Firm was "authorized to be paid 75% of fees and 100% of costs on a monthly basis, if sufficient funds

---

1. The trial was presided over by the Honorable Robert D. Martin, Bankruptcy Judge, Western District of Wisconsin.

exist to make that practicable." Employment Order, *in* Petitioners' Appendix at 52.

On June 12, 2000, the Behles Firm filed a "Contingent Motion to Withdraw from Representation" ("Withdrawal Motion"), representing that it wanted to withdraw from the Debtors' Chapter 12 case due to its inability to obtain employment in accordance with the terms of its Employment Motion. On the same day, the Behles Firm moved to set aside the Employment Order ("Employment Set Aside Motion"), stating that it had an unconditional right to set its rates, the bankruptcy court had approved higher rates for other firms of like experience in Chapter 11 cases, and that the risks involved in representing debtors in possession, as apparent from the KD Case, require higher rates.

The next day, June 13, 2000, the Behles Firm filed a motion requesting that Judge Starzynski recuse himself from the Debtors' Chapter 12 case ("Behles Recusal Motion"), contending that the Employment Order had been entered without a hearing and improperly modified the terms of the Attorney Client Agreement even though no objections to it were filed. Furthermore, the Behles Firm stated:

> [I]t may be that the Court from its own recent experience in the practice of law may harbor a predisposition on these matters; and under the doctrine in *Liteky v. U.S.*, 510 U.S. 540, 545–555[, 114 S.Ct. 1147, 127 L.Ed.2d 474] (1994) if that predisposition toward reducing hourly rates to the range charged by the Judge prior to his elevation to the bench, this would be significant and warrant recusal under what is sometimes the Extra Judicial Source Doctrine. The question here under *Liteky* might be merely the matter of degree, *i.e.*, it's the Court's predilection in this regard is beyond the normal and acceptable.

Behles Recusal Motion at 2, *in* Petitioners' Appendix at 81.

C. *Judge Starzynski's Actions Related to Cash Collateral Orders and the Dismissal of the Debtors' Chapter 12 Case, and the Debtors' Recusal Motion*

On March 29, 2000, approximately twenty days after they filed their Chapter 12 petition, the Debtors filed a motion seeking permission to use cash collateral ("Cash Collateral Motion"). On the same day, the Debtors moved to shorten the notice time on the Cash Collateral Motion. Two days later, on March 31, 2000, Judge Starzynski entered an order granting the motion to shorten time, and set a hearing on the Cash Collateral Motion for April 12, 2000. Several responses and objections to the Cash Collateral Motion were filed. After a hearing, Judge Starzynski entered an order granting the Cash Collateral Motion on April 18, 2000.

On May 9, 2000, the Debtors filed another motion seeking permission to use cash collateral ("Second Cash Collateral Motion"), but they did not seek to shorten the notice time. Responses and objections were filed to the Second Cash Collateral Motion. A preliminary emergency hearing on the Second Cash Collateral Motion was commenced on May 25, 2000, and continued until May 26, 2000. At the conclusion of the hearing, Judge Starzynski set an evidentiary hearing for June 12, 2000. He also authorized the Debtors, in part based on a stipulation, to use a portion of cash collateral for specific utilities and repairs.

On June 5, 2000, the Debtors filed a motion to extend the time to file a Chapter 12 plan until June 12, 2000 ("Plan Extension Motion"). No notice of hearing was filed with the Plan Extension Motion. Rather, it was filed later by the Debtors, on June 14, 2000.

On June 12, 2000, the Behles Firm filed a proposed Chapter 12 plan for the Debtors.[2] No notice of confirmation hearing was filed at that time or within five days of the filing of the plan. *See* N.M. Bankr.Ct. L.R.2082-1.

Also on June 12, 2000, Judge Starzynski held an evidentiary hearing on the Second Cash Collateral Motion. At the conclusion of the hearing, he ordered the parties to file briefs, and indicated his intent to decide the matter by no later than June 26 or 27, 2000. Despite this statement of intent, Judge Starzynski did not enter an order on the Second Cash Collateral Motion on or before June 26 or 27th.

On July 11, 2000, after the Behles Recusal Motion was filed, Judge Starzynski entered a *sua sponte* "Order to Show Cause Why Case Should Not Be Dismissed" ("OSC"). The OSC stated that the Behles Firm had obtained a confirmation hearing date, but it had not filed with the court a notice of hearing related to that date; thus, it appeared as if the hearing date that had been scheduled on the court's calendar had not been noticed to creditors and parties in interest in the Debtors' case, and that the Debtors were in violation of the court's Local Rule 2082-1. Furthermore, with no notice of confirmation hearing on file, it appeared impossible for the Debtors to comply with the 20 day notice of hearing requirement for the confirmation of a plan set forth in Fed. R. Bankr.P.2002(a)(8) and 11 U.S.C. § 1224, mandating that a confirmation hearing be concluded within 45 days of the filing of a Chapter 12 plan, which, in the Debtors' case, was scheduled to expire on July 27, 2000.

One day later, on July 12, 2000, a hearing was held on the Plan Extension Motion, and, twenty days notice having elapsed from the June 14, 2001 notice date without objection, the Motion was granted by Judge Starzynski. Thus, the untimely filing of the Debtors' plan on June 12, 2000, was approved. Although there is no transcript of this hearing in the record, the Debtors and Behles make much of the fact that Judge Starzynski did not inform them at the hearing about his entry of the OSC the day prior. Even assuming that this is true, the Debtors and Behles must have known about the OSC at the hearing or shortly thereafter, because on that same day, July 12, 2000, the Debtors filed a Response to the OSC and moved to extend the time to hold a confirmation hearing ("Confirmation Extension Motion"). The Debtors did not move to shorten the notice time on the Confirmation Extension Motion, and the notice of hearing served on parties interest allowed parties until August 4, 2000 to file objections thereto.

On July 19, 2000, a hearing on the OSC was held. Judge Starzynski ordered the parties to brief the issues raised by the OSC by August 4, 2000. No briefs were filed on that date. *See* Bankruptcy Court Docket Sheet, *in* Petitioners' Appendix at 10–12. At the OSC hearing, he also set a hearing on the confirmation of the Debtors' plan for August 22, 2000.

On August 16, 2000, the Debtors filed an amended notice of hearing on their Confirmation Extension Motion, stating that the amended notice had been served on July 22, 2000, and objections to the Confirmation Extension Motion were due by August 14, 2000. No objections to the Confirmation Extension Motion were filed. The amended notice of hearing allegedly was filed because Judge Starzynski purportedly sent letters to the Debtors or the Behles Firm stating that the first notice of hearing was improperly served ("Alleged

**2.** On July 10, 2000, the Behles Firm filed a

modified Chapter 12 plan for the Debtors.

Faulty Service Letters"). These Alleged Faulty Service Letters are not part of the appellate record, and there is nothing in the bankruptcy court's docket to indicate that such Letters exist.[3]

On August 18, 2000, the Debtors filed a motion seeking to disqualify Judge Starzynski from their case ("Debtors' Recusal Motion") on six grounds. First, the Debtors argued that Judge Starzynski had promised to make a final decision on the Second Cash Collateral Motion, which was vital to the confirmation of their plan, by June 26 or 27, 2000, and he had not yet issued a decision. Second, they stated that Judge Starzynski had issued the OSC at a time when he had just granted the Plan Extension Motion approving the late-filing of their plan, and when he had not yet ruled on their Confirmation Extension Motion, which was filed in response to the OSC. Third, the Debtors maintained that Judge Starzynski's Alleged Faulty Notice Letters were offensive. In particular—

While the Court may in some matters take certain positions *sua sponte*, it seems that the Court, by its letters, is soliciting support of its position that the Debtors' Plan should be dismissed by soliciting objections to the Debtors' Motion for Extension of Time and by soliciting briefs in support of its Show Cause Order.

Debtors' Recusal Motion at 3, *in* Petitioners' Appendix at 100. Fourth, the Debtors complained that, despite a request, a hearing had not been set on the Behles Firms' Withdrawal Motion, Employment Set Aside Motion, and Behles Recusal Motion, thus making it difficult to know whether they were to be assisted by counsel.

Fifth, as in the Behles Recusal Motion, the Debtors alluded to Judge Starzynski's alleged bias against Behles and the Behles Firm based on the events in the KD Case. Finally, sixth, the Debtors made allegations related to "a case called *Miller*," *id.* at 101, but no document from the *Miller* case is included in the record on appeal for this case.

On August 22, 2000, at the time scheduled for the hearing on the confirmation of the Debtors' proposed plan, Judge Starzynski held a hearing on the Behles Firm's Withdrawal Motion, Employment Set Aside Motion and Behles Recusal Motion, and on the Debtors' Recusal Motion (collectively, the "Employment and Disqualification Motions"). At that time, Judge Starzynski set an evidentiary hearing on the Employment and Disqualification Motions, and the confirmation hearing was rescheduled. A notice of hearing on the Employment and Disqualification Motions was served.

On or about October 26, 2000, an order was entered by Judge Starzynski confirming the Debtors' Chapter 12 plan. Prior to confirming the Debtors' plan, Judge Starzynski never entered any orders on the outstanding portion of the Second Cash Collateral Motion, the Confirmation Extension Motion, or the OSC. But, the Debtors acknowledge that the Second Cash Collateral Motion was resolved at their confirmation hearing and, thus, was no longer pending. Affidavit of Debtors ¶ 6, *in* Petitioners' Appendix at 146. Furthermore, by confirming the plan Judge Starzynski implicitly granted the Confirmation Extension Motion, which sought an exten-

---

**3.** When the Petitioners refer to these Alleged Faulty Notice Letters in their Brief, there are either no cites to the record, or they cite to page 83 of their Appendix, which includes a copy of the OSC, or a cite to page 97 of their Appendix, which contains a copy of the amended notice that was filed in response to the Alleged Faulty Notice Letters. Petitioners' Brief at 3 (citing Petitioners' Appendix at 97, which contains the amended notice), 7 (citing to Petitioners' Appendix at 83, which contains the OSC).

sion of time in which to hold the confirmation hearing.[4] Given its confirmation of the plan, the issues raised in the OSC were moot.[5]

On October 31, 2000, the UST objected to the Behles Recusal Motion and the Debtors' Recusal Motion (collectively, the "Recusal Motions"), arguing that the Behles Firm and the Debtors did not make specific allegations that would allow a reasonable person to believe that Judge Starzynski was biased. Following the UST's objection, Judge Starzynski requested briefs and affidavits to be filed related to the Recusal Motions.

### D. The Allegations Against Judge Starzynski in Documents Filed in Support of the Recusal Motions

In January 2001, the Behles firm and the UST filed memorandums of law discussing the procedures that they thought should be employed by Judge Starzynski in determining the Recusal Motions. The Behles Firm did not file any affidavits in support of its Behles Recusal Motion. The Debtors, however, filed an affidavit in support of the Debtors' Recusal Motion ("Debtors' Affidavit") and a document entitled "Affidavit Statements of Documentary Evidence Pursuant to Paragraph 1 of the Scheduling Order Entered by this Court"

("Supporting Pleading"). See Supporting Pleading at 1, in Petitioners' Appendix at 133. The allegations made in these documents are summarized below.

#### 1. The Debtors' Affidavit

a. *Failure to Rule Issues.* The Second Cash Collateral Motion involved monies that were crucial to the Debtors' reorganization. While the Motion was ultimately resolved by stipulation at the confirmation hearing, Judge Starzynski's failure to rule on the Motion jeopardized the Debtors' pre-confirmation farming operations, because they "had to seek unsecured credit from suppliers on a short-term basis [and] do without many necessities. .... " Debtors' Affidavit ¶ 7, in Petitioners' Appendix at 146. Judge Starzynski's failure to rule on the Second Cash Collateral Motion also "otherwise jeopardize [sic] [the Debtors'] ability to meet [their] farm plan to carry [them] through to confirmation." Id.; see Debtors' Affidavit ¶¶ 2–6, in Petitioners' Appendix at 145–46. Judge Starzynski knew how deleterious his failure to rule on the Second Cash Collateral Motion was to the Debtors and, because they do not understand his failure to rule, he must have intended to cause their case to fail. Id. ¶ 8, in Petitioners' Appendix at 146.

---

**4.** The Debtors later sought to set aside the confirmed plan and to modify the confirmed plan. The confirmed plan was modified by an order entered on April 27, 2001.

**5.** No order was ever entered disposing of the OSC. In his Memorandum Opinion, however, Judge Starzynski states that he set aside the OSC and informed the parties of this action by a letter dated August 18, 2000, which was faxed to Behles several hours prior to the filing of the Debtors' Recusal Motion. His letter, which is not part of this Court's record and which is not entered on the docket sheet in the Debtors' case, apparently told the Debtors that they were entitled to the benefit of Chapter 12 "in part because no creditors had

supported the dismissal and in part because the Court preferred to decide the issues on the merits." Memorandum Opinion at 25, in Petitioners' Appendix at 251. Regardless of the contents of this letter, which the Debtors apparently do not dispute inasmuch as they have not mentioned it or included it in the record herein, the OSC was obviously moot at the time that Judge Starzynski confirmed the Debtors' Chapter 12 plan. He would not have confirmed the plan if there were outstanding issues as to whether the case should be dismissed for failure to timely set a confirmation hearing as required under 11 U.S.C. § 1224.

b. *OSC Issues.* The OSC was issued by Judge Starzynski to cause the failure of their case, because he issued it at a time when he knew, based on the Second Cash Collateral Motion, that the Debtors were cash poor, and it forced them "to expend . . . additional sums to notice a Plan that the Court [may] not deem timely filed. . . ." *Id.* ¶ 9, *in* Petitioners' Appendix at 146–47. The OSC was particularly worrisome to the Debtors because they had heard that Chapter 12 may not be extended by Congress and, if such an event were to occur, the dismissal of their case would leave them with no remedy. *Id.* ¶ 11, *in* Petitioners' Appendix at 147.

c. *Solicitation of Dismissal Issues.* Based on two events, Judge Starzynski is claimed to have solicited support for the dismissal of the Debtors' Chapter 12 case. First, Judge Starzynski ordered briefs on the Second Cash Collateral Motion, which the Debtors' "counsel had to brief[,]" and "[i]t seemed to [the Debtors], [by ordering briefing,] the Court was advocating dismissal of [their] cser [sic] and soliciting support for its position rather than just dismissing its How [sic] Cause Order when no one supported dismissal." *Id.* ¶ 10.[6] In addition, the Alleged Faulty Notice Letters "solicit[ed] objections in support of [the court's] Show Cause Order to dismiss [the Debtors'] case. The language in the letters seemed very clear . . . that the Court wanted [the Debtors'] case dismissed, and objections to [their] Motion to Extend the Time in which the Plan could be heard, filed." *Id.* ¶ 12.

d. *Employment of Counsel Issues.* Judge Starzynski's failure to immediately enter an order granting the Employment

Motion and his subsequent reduction of the Behles Firms' hourly rates in the Employment Order made the Debtors "very concerned about losing [their] case." *Id.* ¶ 13, *in* Petitioners' Appendix at 148. Furthermore, the fact that the Withdrawal Motion and Employment Set Aside Motion were never ruled on made the Debtors "concerned" about the Behles Firm's "ability and desire to do everything in their power to get [their] case confirmed." *Id.* ¶ 14.

e. *KD Case Issues.* The Debtors state:

> [O]ur counsel advised us of the situation involving claims being made by the Judge against our counsel's law firm in the K.D. case. We were concerned that the Court's adversary position in regard to our counsel would adversely affect our case. However, on the other hand, we were concerned to proceed in this court without a law firm we felt would fight for us since it was clear that the Court either did not care whether our Plan failed or even wanted our case to fail and be dismissed, and it actively worked in support of that position.

*Id.* ¶ 15.

2. *The Supporting Pleading*

In addition to the Debtors' Affidavit, the Debtors filed the Supporting Pleading in support of their Recusal Motion, which, as noted above, is entitled "Affidavit Statements of Documentary Evidence Pursuant to Paragraph 1 of the Scheduling Order Entered by this Court." *See* Supporting Pleading at 1, *in* Petitioners' Appendix at 133. Although the Supporting Pleading is styled as an "Affidavit . . . of Documenta-

6. The Debtors also state that, other than their brief, no other briefs on the Second Cash Collateral Motion were filed. Debtors' Affidavit ¶ 10, *in* Petitioners' Appendix at 147. This is inaccurate. The United States Department of Agriculture and New Mexico Bank & Trust each filed papers on June 19, 2000. Bankruptcy Court Docket Sheet at 9, *in* Petitioners' Appendix at 9.

ry Evidence[,]" it is not in any way an affidavit as it is not signed by the Debtors nor notarized. Rather, the Supporting Pleading is signed by Behles, and it states that the statements made therein are "in accord with the Rules and specifically Rule 9011...." *Id.* at 1, 11, *in* Petitioners' Appendix at 133, 143. The Supporting Pleading, while purporting to contain "Documentary Evidence," has no exhibits attached to it, but rather makes general references to papers in the KD Case and other bankruptcy cases apparently filed in the District of New Mexico. Finally, while the Supporting Pleading states that it is made by the Debtors, there are passages in the Pleading in which Behles refers to herself, thus indicating that it is her statement, not the Debtors'. *See* Supporting Pleading ¶ 36, *in* Petitioners' Appendix at 141–42.

The Supporting Pleading makes numerous statements about Judge Starzynski's alleged bias against Behles and the Behles firm, and his alleged improper behavior as a Judge. These statements, while not verified by the persons purporting to make them and not supported by any exhibits, are summarized as follows:

a. *Actions Against Behles or the Behles Firm in the KD Case.* The plan that Judge Starzynski prepared for KD in the KD Case, authorizing the Raft Disgorgement Action, was "unique" and was drafted, according to Judge Starzynski's testimony in the Raft Disgorgement Action, without regard to Tenth Circuit law. Supporting Pleading ¶ 2, *in* Petitioners' Appendix at 133. Although the Francis Firm was named as a defendant in the Raft Disgorgement Action, Judge Starzynski asserted similar claims to those of Raft, and pursued, among others, the Behles Firm. These claims in the Raft Disgorgement Action "forever causes the appear-

ance of impartiality." *Id.* ¶ 38, *in* Petitioners' Appendix at 142.

The Raft Disgorgement Action occurred after Judge Starzynski was appointed as a Bankruptcy Judge, and thus he recused himself in matters related to the Behles Firm's fees, and in all contested or adversary matters in which Behles or the Behles Firm were involved. Judge Starzynski ultimately disclaimed any interest in any judgment that might be entered against Behles or the Behles Firm allegedly because of his inability to hear matters related to Behles or the Behles Firm. But, after waiving claims, he specifically requested permission continue to "participate in" in the Raft Disgorgement Action, and he testified on behalf of Raft in the Raft Disgorgement Action. Supporting Pleading ¶ 6, *in* Petitioners' Appendix at 134. Judge Starzynski testified that he understood that KD refused to cooperate with the Behles Firm and the Behles Firm withdrew from representation because KD refused to meet the Behles Firm's high demands for fees. *See id.* ¶¶ 1–7, 9–10, *in* Petitioners' Appendix at 133–35.

b. *Actions Against Others in the KD Case.* Although Judge Starzynski disclaimed an interest in the Raft Judgment against the Behles Firm, an order approving a settlement between Raft, the Francis Firm and another law firm-defendant in the Raft Disgorgement Action expressly required that defendant to pay Judge Starzynski the Starzynski Settlement Payment. "This appeared to be, and was, a claim or attack by a sitting judge against attorneys practicing before his court which had to be tried by judges of that court." *Id.* ¶ 8, *in* Petitioners' Appendix at 135.

c. *Judge Starzynski's Fee Issues.* Judge Starzynski, while in practice, never charged more than $200 per hour representing debtors, and it is difficult for him to understand others charging more than

that amount. As a Bankruptcy Judge, Judge Starzynski has improperly contested Behles' hourly rate on several occasions, including in the Debtors' Chapter 12 case. In *In re Miller*, a case in which Behles represents or represented the debtor, an order was entered by the bankruptcy court unilaterally reducing hourly rates of attorneys in the Behles Firm, including reducing Behles' $225 hourly rate to $200 ("Miller Fee Order"). The Miller Fee Order was not served on Behles in time for her to object, and was in fact served to an incorrect address. It appears from the Supporting Pleading that the judge who entered the Miller Fee Order is Judge Starzynski. *Id.* ¶¶ 11–19, 23, *in* Petitioners' Appendix at 135–38.

d. *Defense of the Employment Motion and Attorney Client Agreement.* In ¶¶ 19–22 and ¶ 29 of the Supporting Pleading, the Debtors defend the hourly rates charged by Behles and the Behles Firm, and denounce any action by a Judge to *sua sponte* reduce agreed hourly rates. Petitioners' Appendix at 137–39.

e. *Acts to Dismiss the Debtors' Chapter 12 Case.* Judge Starzynski attempted to dismiss the Debtors' case *sua sponte* even though he knew that Chapter 12 may not be extended by Congress, and even though no creditor supported dismissal. He entered the OSC and did not inform Behles about the OSC at a hearing on the Plan Extension Motion held the following day. Judge Starzynski issued the OSC, but also delayed in nearly a month before allowing the late-filed plan by the Plan Extension Motion. In other cases, Judge Starzynski has not enforced the time limits for filing a plan under Chapter 12. Supporting Pleading ¶¶ 24–28, 30, *in* Petitioners' Appendix at 138–140.

f. *Court Administration.* Judge Starzynski's delay in ruling on the Second Cash Collateral Motion made it very difficult for the Debtors. His actions in the Debtors' case and in numerous other Chapter 11, 12, and 13 cases, presumably where Behles or a member of the Behles Firm served or serves as counsel, indicate that he does not understand the dynamics of the cases or the priorities to be attended in each case. *Id.* ¶¶ 31–33, *in* Petitioners' Appendix at 140–41.

g. *Alleged Faulty Notice Letters.* The Supporting Pleading states the following regarding the Alleged Faulty Notice Letters:

> Counsel [Behles] has practiced law thirty (30) years and in the [Debtors'] case is the first time that counsel has seen the Court send letters such as [the Alleged Faulty Notice Letters] to opposing counsel soliciting their participation on action taken by the Court *sua sponte* .... This solicitation of opposition to Debtors in a way other than as proposed in the Rules, *i.e.*, setting a hearing and giving notice, gives a definite appearance that the Court is not being impartial, and can create no other appearance.

*Id.* ¶ 37, *in* Petitioners' Appendix at 142; *see id.* ¶ 40, *in* Petitioners' Appendix at 143.

h. *Behles's Statement.* Based on the above statements, the following concluding statements are made, apparently by Behles personally, in the Debtors' Supporting Pleading:

> 36. Counsel for Debtors has been forced to explain to Debtors in this case and other cases about the position of Starzynski in the *K.D.* case due to recusal and because she was concerned that for his obvious adversarial posture affected those client's cases. The Court's predilection to treat counsel differently than other counsel whether it is deleterious to counsel or her client, leads me

to believe, as a reasonable person, that at least in appearance, the Court is not impartial, has created a conflict and may even appear to reflect personal bias.

. . . .

38. . . . Behles has been told by several clients and prospective clients that other attorneys whom they have interviewed have informed them when they advise that person they also intended to interview Behles's Firm, that it might not be a good idea to employ Behles' firm in the matters in from of Judge Starzynski for this reason. This has occurred on three (3) occasions.

39. When I began to see the difficulties in [the Debtors' case] in obtaining cash collateral hearings or cash collateral rulings, which are similar to the problems that had occurred in *Miller*, as well as the problems with the employment order, based on my experience with other clients cited above, I felt compelled to inform the [Debtors] about the *K.D.* matter because I felt that my presence in this case might be deleterious to their ability to reorganize before this court, or that it would appear so if they were to be told about the *K.D.* matter from another source, and that I might be considered remiss in my duty in not informing them of it.

*Id.* ¶¶ 36–39, *in* Petitioners' Appendix at 141–43.

E. *Bankruptcy Court's Disqualification Order, Memorandum Opinion, and Reconsideration Order*

On June 25, 2001, Judge Starzynski entered his Disqualification Order and his 26 page Memorandum Opinion denying the Recusal Motions.[7] He concluded that the fact that the Behles Firm was upset by the court's refusal to give it "carte blanche" in charging fees did not demonstrate prejudice directed at the Debtors. Memorandum Opinion at 14, *in* Petitioners' Appendix at 240. In so holding, Judge Starzynski set forth law demonstrating that he had a duty to assess professional fees in a Chapter 12 case, and that his reduction of the Behles Firm's professionals' hourly rates was not a showing of bias against the Debtors.

Furthermore, Judge Starzynski stated that his issuance of the OSC was not a disqualifying act. He correctly explained that the Chapter 12 process is different than the Chapter 11 process, and Chapter 12 imposes specific deadlines that must be followed. His entry of a *sua sponte* OSC did not indicate bias, and in fact, he set aside his OSC and gave the Debtors the benefit of Chapter 12 protection.

Finally, Judge Starzynski stated that, although he was in an adverse position to the Behles Firm in the KD Case, he disclaimed any interest in any recovery that would be awarded against the Behles Firm. This disclaimer was filed before the Debtors' Chapter 12 case was filed. Thus, the KD Case, and the parties' adverse relationship therein, had no bearing on the Debtors' case.[8]

---

7. Although the title to the Disqualification Order and the Memorandum Opinion refer only to the Debtors' Recusal Motion, the text of both documents makes clear that Judge Starzynski also was ruling on the Behles Recusal Motion.

8. The Debtors and the Behles Firm argued that a Judge other than Judge Starzynski

A Motion for Reconsideration of the Disqualification Order was filed. Judge Starzynski subsequently entered his Reconsideration Order in which he granted the Motion for Reconsideration, but reaffirmed his previous Disqualification Order.

The Debtors filed a Notice of Appeal from Judge Starzynski's Reconsideration Order, which incorporates the Disqualification Order and Memorandum Opinion. As noted above, we designated the Notice of Appeal as a Petition for Writ of Mandamus. As a court "established by Act of Congress," we have jurisdiction over the Petition under 28 U.S.C. § 1651(a).

## II. *Mandamus Standard*

■ As noted above, a petition for a writ of mandamus is the appropriate means of seeking review of a Judge's refusal to disqualify him or herself from a case, such as the Disqualification Order and Reconsideration Order at issue in this case. *Nichols*, 71 F.3d at 350; *American Ready Mix*, 14 F.3d at 1499. Accordingly, although an order denying a motion to recuse typically is reviewed for abuse of discretion,[9] the higher standard of review applicable to mandamus petitions governs in this case. *Nichols*, 71 F.3d at 350 (citing cases).

■ The issuance of a writ of mandamus is left to this Court's discretion. *Kerr v. United States Dist. Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). Mandamus is a drastic remedy, which is to be used only in extraordinary situations.

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Weston v. Mann (In re Weston)*, 18 F.3d 860, 864 (10th Cir.1994). "Mandamus 'will issue only in those exceptional cases where the inferior court has acted wholly without jurisdiction or so clearly abused its discretion as to constitute a judicial usurpation of power.'" *Pacificare of Okla., Inc. v. Burrage*, 59 F.3d 151, 153 (10th Cir.1995) (quoting *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 387 (10th Cir.1990)); *accord Mallard v. United States Dist. Court*, 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989), *cited in Nichols*, 71 F.3d at 350. Petitioners have the burden to show that their right to the writ of mandamus is clear and indisputable. *Weston*, 18 F.3d at 864.

## III. *Discussion*

The disqualification of a Bankruptcy Judge is governed by Federal Rule of Bankruptcy Procedure 5004, which states: "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case." Fed. R. Bankr.P. 5004(a). 28 U.S.C. § 455, in turn, states, in relevant part, that: "Any … judge … of the United States shall disqualify himself in any proceeding in which his impartiality might

---

should consider the Recusal Motions. In his Memorandum Opinion, Judge Starzynski disagreed with this position, and very thoroughly explained that he had the authority to consider the Recusal Motions. Neither the Debtors nor the Behles Firm contests this ruling in the Petition, and, therefore, we will not address it herein.

**9.** Under this standard of appellate review, we are not to disturb the trial court's decision unless we have " 'a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553–54 (10th Cir.1991)) (further quotation omitted).

reasonably be questioned." 28 U.S.C. § 455(a).

▮▮ Under § 455(a), both a judge's interest in or relationship to a case and his or her bias or prejudice against persons involved in a case *"all* [must] be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal [is] required whenever 'impartiality might reasonably be questioned.'" *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (emphasis in original) (quoting 28 U.S.C. § 455(a)). This provision was enacted in 1974 "to promote public confidence in the integrity of the judicial process by replacing the subjective ... standard with an objective test." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n. 7, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), *quoted in Nichols*, 71 F.3d at 350; *United States v. Cooley*, 1 F.3d 985, 992 (10th Cir.1993).

▮▮ In *Liteky*, the Court stated that § 455(a) is subject to an "extrajudicial source factor," which at its base asserts that alleged bias or prejudice " 'must stem from an extrajudicial source [or a source outside the judicial proceeding at hand] and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" 510 U.S. at 545 & n. 1, 555, 114 S.Ct. 1147 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)). Under this factor, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555, 114 S.Ct. 1147. Also—

> [O]pinions formed by [a] judge on the basis of facts introduced or events occurring in the course of the [case], or of prior proceedings, do not constitute a basis for a bias or partiality motion un-less they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration ... remain immune.

*Id.* at 555–56, 114 S.Ct. 1147 (emphasis omitted).

▮▮ Further interpretation of § 455(a) by the United States Court of Appeals of the Tenth Circuit reveals that:

> Under § 455, a judge should recuse if "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." However, "factual allegations do not have to be taken as true," and "[t]here is as much obligation for a judge not to recuse when there is no occasion ... to do so as there is ... to [recuse] when there is." "A judge should not recuse ... on unsupported, irrational, or highly tenuous speculation."

*American Ready Mix*, 14 F.3d at 1501 (citations omitted) (quoting *Hinman v. Rogers*, 831 F.2d 937, 938–39 (10th Cir. 1987)(per curiam)); *accord Switzer v. Berry*, 198 F.3d 1255, 1257 (10th Cir.2000);

*United States v. Greenspan,* 26 F.3d 1001, 1005 (10th Cir.1994); *Cooley,* 1 F.3d at 993–94. The reasonableness test is "limited to outward manifestations and reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question." *Cooley,* 1 F.3d at 993, *cited in Nichols,* 71 F.3d at 351. Thus, "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" are not grounds for disqualification under § 455(a). *Id.* (citing numerous cases). Furthermore, attempts to intimidate a judge do not ordinarily satisfy the requirements of § 455(a). *Id.; accord Greenspan,* 26 F.3d at 1006. Finally, § 455(a) " 'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.' " *Cooley,* 1 F.3d at 993 (quoting *Franks v. Nimmo,* 796 F.2d 1230, 1235 (10th Cir.1986) (further quotation omitted)), *quoted in Switzer,* 198 F.3d at 1258; *Nichols,* 71 F.3d at 351.

▪ Based on these standards and the facts of this case as discussed above, Judge Starzynski in no way abused his discretion in denying the Recusal Motions, and the Petitioners have not shown that they are entitled to a writ of mandamus. In fact, our review of the record indicates that Judge Starzynski acted with the utmost professionalism and in every way within the bounds of applicable law in the Debtors' case. It appears to us that, given the confirmation of the Debtors' Chapter 12 plan and its consequent resolution of the pending motions and the OSC, the Petitioners do not have a real interest in Judge Starzynski's recusal. Rather, his recusal appears to have been fueled by Behles or the Behles Firm or both to further attempt a collateral attack of the judgment against it in the KD Case, *see KD Co.,* 254 B.R. at 482, and to improperly aid the Behles Firm in obtaining the fees and expenses it desires to be awarded in the Debtors' case. We will address the issues raised by the Recusal Motions below.

The Debtors, in the Debtors' Recusal Motion and supporting Debtors' Affidavit, complain about Judge Starzynski's failure to rule on their Second Cash Collateral Motion and his issuance of the OSC. Related to the OSC is Judge Starzynski's alleged solicitation of support for the dismissal of the Debtors' case through the OSC and the Alleged Faulty Notice Letters. None of these complaints are grounds for disqualification under § 455(a) because, first and foremost, they do not arise from events outside of the Debtors' case. *Liteky,* 510 U.S. at 544, 555, 114 S.Ct. 1147. Instead, they are all tied to Judge Starzynski's administration of the Debtors' case, which ultimately concluded with the Debtors successfully obtaining confirmation and post-confirmation modification of their Chapter 12 plan. Moreover, the Debtors' claims would not lead a reasonable person, knowing all of the relevant facts, to harbor any doubts about Judge Starzynski's impartiality. *American Ready Mix,* 14 F.3d at 1501; *Hinman,* 831 F.2d at 939. In particular, as noted above, the Debtors' Chapter 12 case was not, contrary to their fears, dismissed, but rather their plan was confirmed. The confirmation of their plan was accompanied by a stipulation resolving the Second Cash Collateral Motion. The confirmation order also mooted the OSC (if it was still pending), which had, for the reasons stated by Judge Starzynski in his Memorandum Opinion, been properly issued under applicable law. The Alleged Faulty Notice Letters are not part of the appellate record,

and, therefore, we do not know if they exist and cannot evaluate their propriety.

The Debtors also claim that Judge Starzynski should have recused himself from their case because they felt that he wanted their case to fail and Behles was the only person fighting for them. On the other hand, they had been advised by Behles that Judge Starzynski was biased against her due to the KD Case. Debtors' Affidavit ¶ 15, *in* Petitioners' Appendix at 148. As stated above, the facts in this case would not lead a reasonable person to believe that Judge Starzynski wanted the Debtors' case to fail and, in fact, he confirmed their Chapter 12 plan.

The Debtors' real complaint is Judge Starzynski's alleged bias against Behles as a result of the KD Case. This complaint, along with the complaints made by Behles in the Behles Recusal Motion, are not grounds for disqualification under § 455(a). While there are numerous allegations made against Judge Starzynski, summarized above, there is absolutely no evidence as to his purported bias. The Debtors testify in the Debtors' Affidavit that Behles told them that Judge Starzynski was biased against them, and based on his handling of their case, they thought it must be true. This is not evidence of bias, and is not substantiated by the record. Behles did not submit any evidence at all in support of the Behles Recusal Motion. Instead, she apparently relied on the Debtors' Affidavit and the Supporting Pleading, which she filed in support of the Debtors' Recusal Motion, but signed under

Fed. R. Bankr.P. 9011. In the Supporting Pleading there are a variety of statements made about the KD Case and Judge Starzynski's poor treatment of Behles and other counsel in administering bankruptcy cases in his district, all of which are detailed above. All of these statements are unsubstantiated rumor, speculation, belief, opinion and suspicion, and a reasonable person would not consider Judge Starzynski biased based on them. *Cooley*, 1 F.3d at 993, *cited in Nichols*, 71 F.3d at 351. This is especially true when the allegations are examined in conjunction with Judge Starzynski's administration of the Debtors' Chapter 12 case, and the fact that he waived any claim that he or the Francis Firm may have had against the Behles Firm in the Raft Disgorgement Action several years ago.[10] Judge Starzynski's handling of the Debtors' case also does not indicate that any feeling of hostility that he may have toward Behles or the Behles Firm is of "such a high degree of ... antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147. In fact, any hostility that he might have toward Behles, evidence of which is not in the record, did not result in any prejudice to the Debtors.

Other than unsubstantiated statements, the only other set of allegations of bias are based on Judge Starzynski's treatment of the Behles Firms' Employment Motion in the Debtors' Case. Judge Starzynski's approval of the Behles Firm's employment in the Debtors' Chapter 12 case based on lower hourly rates than had been request-

---

10. The Petitioners state that Judge Starzynski regularly recused himself in matters in which Behles appeared prior to their Chapter 12 case. There is no record on this allegation. While Judge Starzynski might have recused himself in matters prior to his or the Francis Firm's claim waiver in the Raft Disgorgement Action, this fact is irrelevant in light of the fact that the claim waiver had taken place when the Debtors filed their case. Furthermore, it appears that Judge Starzynski no longer recuses himself in Behles Firm matters, because Behles makes much of his alleged mistreatment of her and the Behles Firm in other cases-cases that were not included in the record on appeal in this case.

ed by the Firm in the Employment Motion, however, is not grounds for recusal under § 455(a). To the extent that Judge Starzynski's Employment Order can be viewed as an adverse ruling against the Debtors or the Behles Firm,[11] such rulings are not grounds for disqualification under § 455(a). *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147; *American Ready Mix,* 14 F.3d at 1501. The Debtors' "concerns" about their ability to get their case confirmed in light of Judge Starzynski's purportedly hostile Employment Order were proved to be a nonissue when their plan was confirmed. Judge Starzynski's Employment Order would not lead a reasonable person to question his impartiality. In fact, the complaints related to Judge Starzynski's treatment of the Behles Firm's employment are not valid because they are based on a misconception or lack of knowledge of the law governing the employment and compensation of bankruptcy professionals, and the policy behind that law—to protect vulnerable debtors from overreaching. We need not reiterate the well-known applicable law, because it was very aptly set forth by Judge Starzynski in his Memorandum Opinion.

Frankly, we are baffled as to why Behles chose the Debtors' Chapter 12 case as a forum to air her problems with Judge Starzynski. Any bias that Judge Starzynski may have against her or her Firm, while not apparent from the record, cannot be used as a basis for alleging bias against the Debtors in their case especially when there is nothing to show that the Debtors were in any way prejudiced by Judge Starzynski's handling of their case. *See, e.g., In re Cooper,* 821 F.2d 833, 840 (1st Cir. 1987); *FTC v. Amy Travel Serv., Inc.,* 875

F.2d 564, 576 n. 13 (7th Cir.1989), *cert. denied,* 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989); *Davis v. Board of School Comm'rs,* 517 F.2d 1044, 1050–51 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *In re Shuma,* 124 B.R. 446, 449–50 (Bankr. W.D.Pa.1990). As noted above, given the confirmation of the Debtors' plan, the only reason that we can discern for the present Petition is that the Behles Firm is concerned about the fees that it will be awarded in this case if Judge Starzynski remains the assigned Judge. Any problem with future compensation that Judge Starzynski may or may not approve in this case, however, should be resolved by way of appeal, not through baseless recusal motions. *See generally In re Wyslak,* 94 B.R. 540, 545 (Bankr.N.D.Ill.1988) (counsel's request for recusal based on *sua sponte* fee reduction is baseless, because Bankruptcy Judges have a duty to adjust fees and "[n]o objective litigant could reasonably conclude that these practices give rise to questions about impartiality.")

## IV. *Conclusion*

For the reasons stated above, we do not have a definite and firm conviction that Judge Starzynski made a clear error of judgment in refusing to recuse himself from the Debtors' Chapter 12 case and, in fact, given the state of the record, he had a duty not to recuse himself because there was no reason from him to do so. Because the Petitioners have failed to demonstrate that Judge Starzynski abused his discretion in denying the Recusal Motions, much less that his abuse of discretion was tantamount to a judicial usurpation of power,

---

**11.** Judge Starzynski expressly stated in the Employment Order that, although he would approve fees at the lower hourly rates he

designated, the Behles Firm could apply for higher rates in the future if the case would support the payment of such fees.

they are not entitled to mandamus relief. Accordingly, their Petition is DENIED.